## NISSENBAUM v. THE STATE.

496

*Hooper & Hooper,* for plaintiff in error.

*John A. Boykin, solicitor-general, J. W. LeCraw,* and *E. A. Stephens,* contra.

BECK, P. J.   Abe Nissenbaum was tried under an indictment which charged that he did unlawfully, feloniously, and fraudulently make and draw a certain bill of exchange in the fictitious name of J. W. Ellison, as cashier of The Corn Exchange Trust Company of Chicago.   The instrument is in form and substance as follows:

"The Corn Exchange Trust Co.   No. 4025.

Chicago, Illinois, Nov. 30, 1927.

"Pay to the order of Abe Greenberg $1500.00

..........Fifteen Hundred Dollars..........

Cashier's Check.       J. W. Ellison, Cashier."

It was alleged that the act was done with intent to defraud, contrary to the laws of said State, etc.   Upon the trial the jury returned a verdict of guilty, and the accused was sentenced.   At the same term he filed a motion in arrest of judgment, and upon the hearing of this motion the court overruled it.   The motion is based upon the ground that the verdict and the judgment rendered thereon are null and void; for that the statute under which the indictment was drawn (Penal Code, § 247) is too indefinite and uncertain in its terms to be capable of enforcement, in that (1) it purports in general terms to make any drawing or making in a fictitious name of a bill of exchange, promissory note, or due-bill a crime, without any distinction between the making and drawing of such instrument innocently and with lawful intent and purpose and the making or drawing of it with illegal or criminal intent; (2) the statute is violative of paragraph 2 of section 1 of article 1 of the constitution of the State of Georgia (Civil Code, § 6358); further, because it is violative of the section of the constitution set forth in the Civil Code, § 6700; and further, that the statute

is an unreasonable and arbitrary abuse of the police power of the State.

Section 247 of the Penal Code of Georgia, reads as follows: "Any person who shall draw or make a bill of exchange, due-bill, or promissory note, or indorse or accept the same, in a fictitious name, shall be punished by imprisonment and labor in the penitentiary for not less than two years nor longer than seven years." The particular fault attributed to this section is that it does not make "intent to defraud" an essential element of the crime; and it is argued that the drawing of a bill of exchange in a fictitious name without any intention to defraud would be an innocent act which the legislature of Georgia could not make penal. We are of the opinion that the act is not unconstitutional for any of the reasons assigned. It does not take away from any person any right guaranteed by the constitution of the State or of the United States. The making or drawing of a bill of exchange in a fictitious name is the first step taken by one where it is the criminal intent to use such an instrument as a means to defraud. To draw or make such an instrument puts the one who makes or draws the same and has it in his possession in a state of preparation to commit a fraud; and it is not in violation of any constitutional right to say that no one shall put himself in a state of preparation for any such act. It is competent for the legislature to pass preventive laws, laws that will prevent crime; and this is such a measure. That the legislature may prohibit acts which in themselves are innocent to prevent the commission of a crime, is a principle recognized in many cases in our books. In *Bazemore* v. *State*, 121 *Ga.* 619 (49 S. E. 701), it was held: "Under the police power, laws may be passed for regulating common occupations which from their nature afford peculiar opportunity for imposition and fraud. . . Because of its value, the ease with which it is taken from the field, and the difficulty of detecting the thief, the State may regulate the sale of seed-cotton, and fix a punishment upon the person who buys in violation of the terms of the statute." In the course of the opinion in that case it was said: "Presumptively every one may agree upon the terms on which he will sell his own property or buy that of another. This right can only be limited and made penal by necessity of preserving the public health, the public morals, or the public safety, included in which would be the neces-

sity of protecting the property of the public. Instances may be found in liquor laws; in statutes requiring the written consent of parents or friends before liquor or opium can be sold to certain persons; the requirements as to inspection of fertilizers, turpentine, flour; and similar statutes too numerous to mention. The act in question is in pursuance of the police power (Civil Code [1895], § 5734) [1910, § 6393], which includes the right on the part of the State ' to enact rules for the conduct of the most necessary and common occupations, when from their nature they offer peculiar opportunities for imposition and fraud. ' Cooley' Con. Lim. (7th ed.) 887; Turner *v.* Maryland, 107 U. S. 41 et seq." (2 Sup. Ct. 44, 27 L. ed. 370.)

The act held constitutional in the case just cited penalized the purchasing of seed-cotton at night. The purchasing of seed-cotton at night might be a perfectly innocent act, an act done in the pursuance of a lawful trade or occupation; but it may also create frequent opportunities for the commission of crime, and it is prohibited. There are numerous other statutes in our criminal code prohibiting certain acts which if considered by themselves, without their relations to other acts and consequences, would be perfectly innocent, but which are prohibited under penalties to prevent criminal consequences. And this statute itself has stood for a long time without this objection being raised to it. We are of the opinion that the act is not unconstitutional upon any of the grounds taken. Nor is it void on the ground that it is uncertain, or unreasonable.

*Judgment affirmed. All the Justices concur.*