## BRAMLEY *v.* THE STATE.

No. 12501. MARCH 14, 1939. REHEARING DENIED MARCH 24, 1939.

832

*Leonard Farkas* and *Walter H. Burt,* for plaintiff in error.

*M. J. Yeomans, attorney-general, Carl E. Crow, solicitor-general, O. H. Dukes,* and *E. J. Clower,* contra.

*Powell, Goldstein, Frazer & Murphy, Hirsch & Smith, Heyman & Heyman, D. F. McClatchey,* and *Louis Regenstein Jr.,* for persons at interest, not parties.

BELL, Justice. (After stating the foregoing facts.) The defendant by his demurrer contended that the statute on which the accusation was based is unconstitutional and void for a number of reasons, including (1) it is not a valid exercise of the police power, but is an arbitrary and unreasonable interference with a lawful and harmless business, the regulation of which as attempted is not within the scope of the police power; and (2) that it violates the due-process and equal-protection clauses of the State and Federal constitutions. Constitution of the United States, amendment 14 (Code, § 1-815); Constitution of Georgia, article 1, section 1, paragraph 2 (§ 2-102), article 1, section 1, paragraph 3 (§ 2-103). After a thorough consideration of all the questions raised, we have reached the conclusion that the statute is invalid for the reasons just enumerated; and therefore we will omit from this opinion any discussion or statement of the other grounds of attack. If the regulations imposed by this statute do not fall within the realm of the police power, the act is unconstitutional, as contended, in that it denies to the defendant the equal protection of the laws, and deprives him of a valuable property right without due process of law. The stated attacks are so intimately connected as to present substantially a single question, and do not require separate consideration. As in all cases where the constitutionality of a statute is involved, we are confronted, on the one hand, with the duty of sustaining the act unless its validity is clear and palpable, and on the other with the positive command of the constitution of this State that legislative acts in violation of either the State or the

Federal constitution are void, and the judiciary shall so declare them. Code, § 2-402; *Mayes* v. *Daniel,* 186 *Ga.* 345 (198 S. E. 535). The responsibilities thus imposed, while entirely consistent, require a survey in opposite directions, and the greatest care must be taken that neither of them is violated. The constitution of this State empowers the General Assembly "to make all laws and ordinances consistent with this constitution, and not repugnant to the constitution of the United States, which they shall deem necessary and proper for the welfare of the State." Art. 3, sec. 7, par. 22 (Code, § 2-1822). The plain meaning of this provision is that the General Assembly can not exercise an unbounded authority in determining what is necessary and proper for the public welfare, but must proceed, in this as in other instances, consistently with constitutional guaranties.

The legislation here under consideration would impose regulations upon the business or occupation of photography. It contains an elaborate statement of rules as to how such business or occupation shall be governed, and of conditions upon which persons may be permitted to engage therein. After stating several definitions and providing for a board of photographic examiners, it declares that, except as to classes specified, all persons desiring to practice photography shall be required to stand an examination, and "qualify as to competency, ability, and integrity." In article 1 of this statute, an itinerant nonresident photographer is defined to be "any person, firm, or corporation, engaged in the business of going into and about the city or county, soliciting orders through the sale of coupons, or otherwise, for portrait photographic work, enlargements of portraits, and tinted portraits whether in watercolors or in oils, and not having within this State a permanently established and bona fide place of business of at least one year standing before applying for the license to do business." Another section declares that "No person, firm, or corporation shall sell, offer for sale, or solicit orders for any product of photography unless duly registered under the terms of this act, or employed by a person, firm or corporation duly registered under the terms of this act." The act also declares that any person violating any of its provisions, or engaging in any of the activities or practices therein defined, without being duly licensed "as herein provided," shall be guilty of a misdemeanor. The defendant in this case was engaged in soliciting

orders for a nonresident corporation, and was accused of crime because he did then and there solicit such orders without first applying for and obtaining a license from and registering with the State Board of Photographic Examiners in accordance with the foregoing statute, and because he was not employed by any person, firm, or corporation duly registered under the terms thereof. The statute embraces also, with stated exceptions, all persons engaged either in the practice of photography or in photofinishing. Examination fees for these two branches of the business were fixed at $15 and $7.50 respectively. Furthermore, before any applicant may be admitted to an examination or be licensed, the board shall have the power "to require proof as to the technical qualifications, business record, and moral character of such applicant; and if an applicant shall fail to satisfy the board in any or all of these respects, the board may decline to admit such applicant to examination, or to issue license." While no examination may have been required of one engaged, as was this defendant, simply in soliciting orders for the enlargement of photographs and the tinting of photographs, he was yet prohibited from engaging in such occupation, unless he or his employer was duly registered under the terms of the act; and his employer could not have become registered without qualifying as to competency, ability, and integrity, and complying with other prescribed terms and conditions.

Was the General Assembly authorized, under the police power, to impose these various regulatory conditions upon those engaged in the business of photography or photofinishing; or, more concretely, was there any basis affecting the public interest for the requirement of examination "as to competency, ability, and integrity"? In *Schlesinger* v. *Atlanta*, 161 *Ga.* 148, 158 (129 S. E. 861), it was said: "The right to use one's own property as he sees fit, so long as he does not thereby injure others, and to engage in lawful occupations in proper places and at proper times, is a right which not even the legislative power of the State can take from the individual. The right to make a living is among the greatest of human rights, and when lawfully pursued can not be denied." In *Felton* v. *Atlanta,* 4 *Ga. App.* 183 (61 S. E. 27), it was said to be the common inherent right of every citizen to engage in any honest employment he may choose, subject only to such restrictions as are necessary for the public good. There are many occupations which

may be regulated for the promotion of the public welfare, and a number of examples may be found in decisions by this court. *Cutsinger* v. *Atlanta,* 142 *Ga.* 555 (83 S. E. 263, L. R. A. 1915B, 1097, Ann. Cas. 1916C, 280), as to boarding-houses; *Cooper* v. *Rollins,* 152 *Ga.* 588 (110 S. E. 726, 20 A. L. R. 1105), as to barbers; *Clein* v. *Atlanta,* 164 *Ga.* 529 (139 S. E. 46, 53 A. L. R. 933), as to auction sales of jewelry; *Camp* v. *State,* 171 *Ga.* 25 (154 S. E. 436), as to real-estate brokers; *City of Newnan* v. *Atlanta Laundries,* 174 *Ga.* 99 (162 S. E. 497, 87 A. L. R. 507), as to laundries; *State Board of Barber Examiners* v. *Blocker,* 176 *Ga.* 125 (167 S. E. 298), as to operators of beauty-shops. The regulation of a lawful business, however, is dependent upon some reasonable necessity for the protection of the public health, safety, morality, or other phase of the general welfare; and unless an act restricting the ordinary occupations of life can be said to bear some reasonable relation to one or more of these general objects of the police power, it is repugnant to constitutional guaranties and void. 11 Am. Jur. 1147-53, §§ 336, 338. It has been said by this court that the police power of the General Assembly is very broad, but must be exercised in subordination to the constitution of this State. The same is true, of course, as to the constitution of the United States. *Cutsinger* v. *Atlanta,* supra; *Carey* v. *Atlanta,* 143 *Ga.* 192 (84 S. E. 456, L. R. A. 1915D, 684, Ann. Cas. 1916C, 1151); *Smith* v. *Atlanta,* 161 *Ga.* 769 (132 S. E. 66, 54 A. L. R. 1001); *Commissioners of Glynn County* v. *Cate,* 183 *Ga.* 111, 113 (187 S. E. 636). As related to lawful occupations, there are many instances in which a particular regulation may be so near to the borderline that it is difficult to determine whether it is permissible in behalf of the general welfare, or whether it transcends the power of the General Assembly and violates the constitutional rights of the individual.

This court has never before had occasion to consider a regulatory measure in reference to the business or occupation of photography; and it seems that none of the other courts of this country have been called upon to do so, except in a very few recent cases. In Wright *v.* Wiles (Tenn.) 117 S. W. (2d) 736 (decided June 11, 1938), an act of the same nature as that here under consideration was held invalid because of defect in its passage; but the court further expressed the view, obiter, that the act could not be sustained as a justifiable exercise of the police power. A statute containing sub-

stantially identical conditions was held valid by the Supreme Court of North Carolina, in State v. Lawrence, 213 N. C. 674 (197 S. E. 586) (decided June 15, 1938), two Justices dissenting. Without quoting, we respectfully call attention to the forceful dissenting opinion as delivered in that case. In an article entitled "Haphazard Regimentation Under Licensing Statutes," and published in the North Carolina Law Review for December, 1938, Vol. 17, No. 1, pp. 1-18, the authors critically examined the majority opinion in the Lawrence case, and expressed the view that it was unsound, for various reasons. In Territory v. Kraft, 33 Hawaii, 397 (decided April 17, 1935), the Supreme Court of Hawaii held that a statute enacted in that jurisdiction in 1933, so far as it prohibited "an uncertified photographer from practicing photography for compensation or holding himself out as competent to practice photography, . . is an unconstitutional exercise of the police power, in that it imposes an unwarranted restriction upon the right of the citizen to engage in an innocent calling that bears no reasonable relation to the health, the morals, the safety or the general welfare of the public." The reasoning of the court was similar to that employed in the dissenting opinion in State v. Lawrence, supra, and since the report of the Kraft case may not be generally available, we take the liberty of quoting somewhat at length from it, as follows:

"Was it within the constitutional power of the legislature to exclude from the practice of photography for profit all persons who had not complied with the provisions of the act? The answer to this inquiry depends on the nature of photography—whether as an occupation it is innocent and innocuous, or whether it is infected with some quality that might render it dangerous to the morals, the health, the comfort, or the welfare of those who constitute the public. If the latter is true, it is within the police power of the legislature to place upon it the regulations and restrictions contained in the act. If, on the other hand, the practice of photography is harmless and without detriment to the public welfare, it was beyond the power of the legislature to restrict it to those having a certificate of proficiency. . . It is unquestionably true that the police power of the State has an ever-widening horizon. It is nevertheless not boundless, and its exercise is still under the control of certain classic principles of constitutional law. It can

not infringe upon the guaranteed right of the citizen to life, liberty, or property, and the pursuit of happiness, unless in the exercise of this right the public health, safety, or welfare is imperiled. . . No business, however innocent and harmless, is entirely free from the possibility of becoming, under improper or dishonest management, in some degree inimical to the public interest. The business of shining shoes, unless efficiently conducted, might result in injury to the material of which shoes are made. A dry-goods business might, if operated by a dishonest or ignorant owner, result in foisting on the public unskillfully-made or otherwise shoddy clothing. The business of horseshoeing might likewise be injurious. . . It is contended by the Territory that the practice of photography for commercial purposes may, unless restricted by the regulations contained in the act, be injurious to the public, because the practitioner, if unskilled in his art or dishonest in his methods, may impose upon those dealing with him in ignorance of his lack of skill or his dishonesty, by taking pictures that are of inferior quality or by taking a deposit on orders for the enlargement of photographs, which orders are never filled. . . If this should be held to be a sound argument, the police power could be used to lay upon any business, however unrelated to the general welfare, burdensome and unreasonable restrictions. This would be to extend this great power beyond its recognized limits, and to convert it from a shield into a sword. Instead of furnishing needed protection to the public, it would, as in the instant case, confer upon a board of examiners, composed entirely of professional photographers, the power to grant to a selected number the right of pursuing a useful and innocent business. This would be to create a monopoly, and thus exclude from the business many competent persons who might find in it a congenial occupation and a means of livelihood." In that case the court cited and quoted from other decisions by American courts, including the Supreme Court of the United States, supporting on principle the conclusion there reached.

For decisions based upon like principles, and holding invalid regulations as to other occupations, see Dasch v. Jackson, 170 Md. 251 (183 Atl. 534), as to paper hangers; Doe v. Jones, 327 Ill. 387 (158 N. E. 703, 55 A. L. R. 303), as to private surveyors; Howard v. Lebby, 197 Ky. 324 (246 S. W. 828, 30 A. L. R. 830), as to house-painters; In re Aubrey, 36 Wash. 308 (78 Pac. 900,

104 Am. St. R. 952); and Bessette v. People, 193 Ill. 334 (62 N. E. 215); People v. Beattie, 96 App. Div. 383 (89 N. Y. Supp. 193), as to horseshoeing. We have heretofore mentioned several decisions by this court, in which various occupations were held *subject* to the particular regulations considered in each of them respectively. In the following cases ordinances were held *invalid*, though perhaps for reasons not pertinent in the instant case: *Gregory* v. *Quarles*, 172 *Ga.* 45 (157 S. E. 306), and *Dewell* v. *Quarles*, 180 *Ga.* 864 (181 S. E. 159), as to plumbing; *Southeastern Electric Co.* v. *Atlanta*, 179 *Ga.* 514 (176 S. E. 400), as to electricians. We do not deem it necessary in this connection to cite all of the decisions of this court which may have dealt with regulatory statutes or ordinances. From an examination of the cases, we are satisfied that there is no Georgia decision which could be fairly taken as sustaining, even by analogy, the validity of the photography statute here under consideration, as a valid exercise of the police power. On principle, we are constrained to agree with the decision of the Supreme Court of Hawaii in Territory v. Kraft, and with the dissenting opinion in the North Carolina case of State v. Lawrence, supra. If this is not a correct conclusion as to this particular business, then it would seem that there is scarcely any kind of business, however innocent and harmless, to which similar regulations might not be applied; and that the police power may be actually extended virtually without limit, notwithstanding the restraints expressly stated by the constitution. "Under the police power, laws may be passed for regulating common occupations which from their nature afford peculiar opportunity for imposition and fraud." *Bazemore* v. *State*, 121 *Ga.* 619 (49 S. E. 701); *Nissenbaum* v. *State*, 167 *Ga.* 495, 497 (146 S. E. 189). The business of photography does not, by its nature or the usual manner of its conduct, afford any greater or more peculiar opportunity for fraud than do most of the other common occupations of life. As to fraud which may be committed in particular instances the courts are open for criminal prosecution, and for breaches of warranty, either express or implied, remedies are provided by law as in other cases.

If only those who, in the opinion of the examining board, possess the necessary moral qualifications are to be permitted to engage in the ordinary occupations, persons who are unable to establish good

character will not only be deprived of their means of livelihood, but may become public charges or burdens upon their families and friends, unless, forsooth, they should determine upon a general course of crime as the only means of existence. In other words, the necessary result would be that the honest would be compelled to support the dishonest, directly or indirectly; whereas such was never the intention of the fundamental law. Compare Rawles *v.* Jenkins, 121 Ky. 287, 292 (279 S. W. 350). It should be remembered that people generally have some capacity for discovering fraud and otherwise avoiding injury in business transactions; and it might not be irrelevant to inquire whether all ingenuity in this respect should be rendered superfluous and brought into a state of desuetude.

From what has been said it is our opinion, that, even if some regulations of the business of photography might be permissible, the act of March 25, 1937, is so drastic and extreme that it can not be sustained as a valid exercise of the police power, and therefore that it offends the constitutional provisions invoked by the defendant. In article 9 of this act it is declared, in effect, that every part of it is to be individually operative; and that if any portion should be adjudged invalid, the remainder will not be affected or invalidated by such adjudication. This clause can not change the result as to this defendant, even if the particular activity in which he was engaged, namely, that of going from house to house for the purpose of soliciting orders for the enlargement of photographs or the tinting of photographs, might, as an isolated occupation, be subject to some of the regulations imposed by this statute, or even if photography in general might be subject to a degree of regulation. If a statute is in part constitutional and in part unconstitutional, and the objectionable portion is so inseparably connected with the general scheme, that in the event it should be stricken, effect can not be given to the intention of the legislature, the result will be that the whole act fails, and no part of it can be considered as the law. *Bennett* v. *Wheatley,* 154 *Ga.* 591, 595 (115 S. E. 83). The various portions of this act are so inseparably connected that they can not properly be considered severally in arriving at a conclusion in this case, and the act as a whole is so extreme and unreasonable that the entire structure must fall under the weight of the constitution; and this is true notwithstanding the declaration

contained in article 9. See, in this connection, *Hoover* v. *Brown,* 186 *Ga.* 519, 528 (198 S. E. 231), and cit. The court erred in not sustaining the demurrer and quashing the indictment.

*Judgment reversed. All the Justices concur, except Reid, Chief Justice, disqualified.*