E. E. GILCHRIST, doing business as FORT DODGE BEAUTY ACADEMY, Appellee, v. WALTER L. BIERRING et al., Appellants.

No. 46433.

900

June 6, 1944.

John M. Rankin, Attorney General, Edward S. White, Jr., Assistant Attorney General, and Maher & Mullen, Special Assistant Attorneys General, of Fort Dodge, for appellants.

Paul E. McCarville and Edward Breen, both of Fort Dodge, for appellee.

MILLER, J.—On October 31, 1935, plaintiff was issued a license to operate the Fort Dodge Beauty Academy, a school of cosmetology at Fort Dodge, Iowa, and such license was renewed from year to year until October 16, 1942, when the board of cosmetology examiners refused to approve plaintiff's application for a renewal of the license then about to expire on October 31, 1942. The resolution of the board recited:

"This resolution is adopted for the reason that said school has violated laws and rules to which it is subject, in the following particulars: 1. Not adhering to schedule. 2. Allowing

students to work on the public before being properly trained. 3. Not meeting sanitary requirements. 4. Poor ventilation in classroom. 5. Inefficient instructors. 6. Instructors working on the public. 7. Offering students double time for working on the public after hours.''

Pursuant to the licenses previously issued to him, plaintiff had invested several thousand dollars for equipment and school facilities. Before the board acted upon his application, he received no notice or intimation that it would be denied and he had no opportunity to be heard thereon. This action was commenced October 31, 1942.

Plaintiff's petition asserts: He is operating his school in Fort Dodge; he has complied with all laws of this state and all rules and regulations lawfully adopted by the department of health and the board of cosmetology examiners, and has observed all such requirements as to location, equipment, sanitation, curriculum, method and manner of instruction, and character and qualifications of instructors; on October 20, 1942, he was advised that the license for his school would not be renewed; prior to such date he had no opportunity to be heard in support of his application and no hearing of any kind was conducted thereon; the action of defendants is unwarranted in law, and is beyond their jurisdiction; the refusal to renew plaintiff's license is arbitrary and unreasonable, intended to destroy plaintiff's business, and, in legal effect, is a confiscation of property in violation of his constitutional rights, without due process of law; in violation of plaintiff's constitutional rights, defendants refused to afford plaintiff an opportunity to be heard in support of his application; plaintiff tendered the annual fee and his tender was rejected; unless restrained, defendants will prevent plaintiff from operating his school, will confiscate his property and he will suffer irreparable injury; plaintiff has no adequate remedy at law; defendant Bierring is acting without power, authority, or jurisdiction to prescribe any rule or regulation in connection with the operation of schools of cosmetology other than sanitary rules and regulations; it is beyond the power and jurisdiction of defendants to suspend, revoke, or refuse to renew plaintiff's license, and the purported action of defendants, in the absence of a hearing and without an opportunity to be heard,

unless restrained, will wrongfully deprive plaintiff of his liberty and property. Count I of the petition prayed for a writ of injunction; Count II, for a writ of mandamus. A temporary injunction was issued.

. Defendants' answer admitted various allegations of the petition and denied others. Defendants admit that on October 16, 1942, they notified plaintiff that his school license was not approved for renewal for the reasons above quoted. They assert: Plaintiff's school had been operated in violation of the laws and rules therein referred to; plaintiff had been requested at various times to observe and follow such rules but failed, neglected and refused to do so and such failure, neglect and refusal, in the opinion of defendants, would continue were plaintiff permitted to operate his school; on October 27, 1942, plaintiff was advised of the grounds for refusal to renew his license; in so refusing, defendants exercised good faith and discretion vested in them by law, which cannot be directed by the court. The prayer was that the action be dismissed.

An extensive trial was had. The record of the testimony comprises over one hundred pages of the abstract. There were also many exhibits. The court found it to be unnecessary to its decision of the case to review the evidence or to make any findings of fact. Its decision was based upon consideration of constitutional questions alone. The court determined that, in the delegation of legislative power to an administrative body, it is necessary for the legislature to establish a definite policy and to fix standards within which the administrative body can exercise its delegated power; that in the statutes authorizing the board of cosmetology examiners to approve or disapprove a license for a school of cosmetology there is an entire absence of any declaration, either of policy or standards; the board has no legislative limits within which it should function, no standards to guide its conduct; such a situation is not merely a delegation of legislative power, but abdication, and this the legislature cannot do; the rules promulgated by the board are without legal force or effect and may not be enforced; since plaintiff had made a substantial investment in his school, defendants' refusal to renew his license, without notice or hearing, violates due process of law. Accordingly, defendants were enjoined from exercising any juris-

diction with respect to the approval or disapproval of the plaintiff's school or from interfering with its operation as by law provided, upon payment of the annual license fee, and defendant Bierring and his successors in office were ordered to renew plaintiff's license annually upon payment of the annual fee. Defendants appeal to this court.

I. Before considering the specific statute which the trial court determined was inadequate to meet constitutional requirements, we will briefly review two chapters of the Code, which form the background of statutory law applicable to the specific section which is directly involved herein.

Title VIII of the Code, 1939,[1] pertains to the practice of certain professions affecting the public health. Chapter 115 therein[2] gives jurisdiction to the state department of health over the professions of medicine and surgery, podiatry, osteopathy, chiropractic, dentistry, dental hygiene, optometry, cosmetology, barbering, and embalming. No person can practice any of these professions unless he shall obtain a license from the department;[3] a man must be twenty-one years of age, but a woman may practice cosmetology if eighteen years old.[4] The department may refuse to grant a license upon any of the grounds for its revocation.[5] Licenses must be displayed by all practitioners,[6] shall expire June 30th of each year, and shall be renewed annually without examination upon payment of the annual fee.[7] One who has permitted his license to lapse may be reinstated without examination upon recommendation of the examining board and payment of renewal fees.[8] Examining boards are appointed by the governor for each profession.[9] Membership on such boards is limited to members of the particular profession[10] who are actively engaged therein.[11] Specific provisions are made for examination of applicants for practice in each profession.[12] Each examining board is authorized to make rules for its examinations.[13] Ten grounds for revocation of a license are specified.[14] The district court is given jurisdiction of the pro-

1. Chs. 114.2 to 124.3, inc.
2. Sec. 2438 et seq.
3. Sec. 2439
4. Sec. 2440
5. Sec. 2441
6. Sec. 2444
7. Sec. 2447
8. Sec. 2448
9. Sec. 2449
10. Sec. 2452
11. Sec. 2453
12. Secs. 2466 to 2480, inc.
13. Sec. 2473
14. Sec. 2492

ceeding to revoke or suspend a license.[15] The attorney general or county attorney prosecutes the action on behalf of the state or county.[16] Ten days' notice must be given the licensee.[17] The proceeding is summary in its nature, triable in equity,[18] with both parties accorded a right of appeal.[19]

Chapter 124.2 applies exclusively to cosmetology. Membership in the profession is defined,[20] and specific qualifications are fixed,[21] including an examination by the board, which can be given only to graduates of schools of cosmetology, approved by the board and licensed by the department.[22] The department is authorized to prescribe sanitary rules for shops and schools as it may deem necessary, with particular reference to the precautions necessary to prevent the creating and spreading of infectious and contagious diseases.[23] Managers of shops who supervise operators must be licensed.[24] No person, firm, or corporation shall employ operators who are not licensed.[25] All fees paid to the department by practitioners are kept in a separate fund by the treasurer of state[26] and the cost of administering the law is limited by the amount in the fund.[27]

With the foregoing as a background, let us consider the specific section which is directly involved herein. It is section 2585.18, which provides as follows:

"No school shall be approved by the board of cosmetology examiners unless and until such school shall have made a verified application to the department for a license to teach cosmetology. Such application shall be accompanied by the annual license fee, shall state the name and location of said school, and such other additional information as the board of cosmetology examiners may require. When such application shall have been approved by the board of cosmetology examiners the department shall issue to the applicant a license to conduct such school of cosmetology for one year. Subject to the approval of the board of cosmetology examiners any such license may be annually renewed upon the receipt of the annual license fee."

15. Sec. 2495
16. Sec. 2498
17. Sec. 2501
18. Sec. 2502
19. Sec. 2507
20. Secs. 2585.10, 2585.11
21. Sec. 2585.12
22. Sec. 2585.13
23. Sec. 2585.15
24. Sec. 2585.21
25. Sec. 2585.22
26. Sec. 2585.23
27. Sec. 2585.17

II. Purporting to act pursuant to authority granted by this statute, the board of cosmetology examiners has prescribed various rules for the operation of schools of cosmetology. The district court determined that the statute, on which the board relies for authority to exercise delegated legislative power, is unconstitutional as an improper delegation of such power. In so deciding, the court injected an issue herein which does not appear to have been raised by the pleadings.

From the résumé of plaintiff's petition heretofore set forth, it will be noted that plaintiff did not challenge the constitutionality of any statute. Instead, he challenged the constitutionality of defendants' conduct. He asserted that no power or authority had been granted defendants to proceed as they did, that they violated constitutional guaranties by acting without jurisdiction or authority. Plaintiff's challenge was directed against the defendants, not the legislature. The question plaintiff raised was not, Can such power be so delegated? It was, Has any such power been delegated?

Defendants contend in this court that, since plaintiff elected to require the issuance of a license under section 2585.18, he cannot here challenge the constitutionality of that statute. Were we to decide this case on the theory adopted by the trial court it would be necessary to consider this proposition. But that is not required of us in deciding the issues actually presented by the pleadings.

III. Plaintiff's petition recognizes that, under section 2585.15, the department of health has been delegated power to prescribe rules and regulations relating to sanitation of schools of cosmetology. He does not challenge the constitutionality of such delegation of power. He asserts that that is the only delegation to make rules and regulations that the statutes warrant. As shown by our review of the statutes, that is the only express delegation of power to make rules relating to such schools. Defendants contend that other delegation of power to prescribe rules is inherent in the various grants of power to the board of cosmetology examiners.

As previously stated, the board has the power and duty of approving schools whose graduates may take examinations to practice cosmetology, and to prescribe the course of study in

such schools (section 2585.13), and section 2585.18, above quoted, provides that approval by the board is necessary to secure the annual license to operate such a school. Defendants contend that the delegation of power to make rules governing schools of cosmetology is implicit in the power to approve such schools, citing our pronouncement in Willis v. Consolidated Ind. Sch. Dist., 210 Iowa 391, 396, 227 N. W. 532, 535, as follows:

"It is the universal rule of statutory construction that, wherever a power is conferred by statute, everything necessary to carry out the power and make it effectual and complete will be implied. [Citing cases.]"

But, in determining what power is to be implied from the power expressly conferred by statute, we are also mindful of the principle stated in Hunter v. Colfax Consolidated Coal Co., 175 Iowa 245, 266, 154 N. W. 1037, 1045, 157 N. W. 145, L. R. A. 1917D, 15, Ann. Cas. 1917E, 803, as follows:

"* * * the courts should never give construction to a statute which will render it unconstitutional, or which may even create serious doubts as to constitutionality, if any other construction be possible, within the bounds of reason."

Accordingly, we cannot imply a delegation of power which offends against the constitution. Any implied powers must necessarily be such as conform to the limitations imposed by that document.

As ably pointed out by the trial court, this court has repeatedly recognized that legislative power, such as that to make rules and regulations, can be delegated only after the legislature has established a definite policy and has fixed standards or brackets within which the administrative body may fill in the details in the exercise of its delegated power. Goodlove v. Logan, 217 Iowa 98, 251 N. W. 39; State v. Van Trump, 224 Iowa 504, 275 N. W. 569; Miller v. Schuster, 227 Iowa 1005, 289 N. W. 702, and cases cited therein. An implied power to make rules and regulations must necessarily conform to this constitutional requirement. When the rules and regulations of defendants are so considered, we find that the result reached by the trial court herein was correct in some respects and erroneous in others.

██ IV. In defendants' order refusing to renew plaintiff's license, above quoted, seven grounds are given. The department had authority to make rules as to most of those subjects. Items 3 and 4 relate to sanitary requirements. Section 2585.15 expressly delegates to the department authority to prescribe rules and regulations in regard thereto. Plaintiff does not challenge such delegation of power. Nor do we think it could be successfully challenged. Pierce v. Doolittle, 130 Iowa 333, 106 N. W. 751, 6 L. R. A., N. S., 143. The other items do not relate to subjects over which authority to make rules has been expressly delegated by statute. Any authority to prescribe rules thereon exists only by implication, but authority to prescribe rules on most of these subjects is clearly to be inferred from the statutes. Section 2585.13 delegates to the board of cosmetology examiners authority to prescribe the course of study which must be completed before one can take the examination for a license to practice the profession. Such delegation of power implies authority to make reasonable rules and regulations relating to the course of study to be pursued in an approved school and the method of teaching it. Accordingly, items 1, 2, 5, and 7 would appear to be subject to reasonable rules and regulations of the board.

██ Item 6, which condemns "instructors working on the public," cannot be sustained. In many professional schools, instructors are permitted to also engage in private practice. There is no implied power in the board to prohibit by rule or regulation such conduct in schools of cosmetology.

In State v. Logsdon, 215 Iowa 1297, 1300, 248 N. W. 4, 5, we state:

"It is well settled that a license law adopted for the purpose of its effect on trade, or to remove competition, or which needlessly interferes with lawful occupations, is class legislation, and effects the taking of property without due process of law. And the sections of the statute under consideration must be sustained, if at all, as a proper exercise of the police power, and, from the nature of its provisions, must be conducive to securing and protecting the public health, safety, or welfare."

The foregoing pronouncement is in accord with numerous

decisions from other jurisdictions. In Bramley v. State, 187 Ga. 826, 834, 2 S. E. 2d 647, 651, the court states:

"In Schlesinger v. Atlanta, 161 Ga. 148, 159 (129 S. E. 861), it was said: '* * * The right to make a living is among the greatest of human rights, and when lawfully pursued, can not be denied.' In Felton v. Atlanta, 4 Ga. App. 183 (61 S. E. 27), it was said to be the common inherent right of every citizen to engage in any honest employment he may choose, subject only to such restrictions as are necessary for the public good. * * * The regulation of a lawful business, however, is dependent upon some reasonable necessity for the protection of the public health, safety, morality, or other phase of the general welfare; and unless an act restricting the ordinary occupations of life can be said to bear some reasonable relation to one or more of these general objects of the police power, it is repugnant to constitutional guaranties and void."

In Dasch v. Jackson, 170 Md. 251, 269, 183 A. 534, 541, 542, the court states:

"Any such requirement would be palpably absurd, for a paper hanger is neither employed nor thought of as a sanitary engineer, but as one engaged in a useful and harmless art, requiring skill, taste, knowledge of the materials needed, and of the proper manner of utilizing them, and nothing more. * * * the promise of the right to liberty and the pursuit of happiness held out by the Constitution would be ironical mockery. There must of necessity be somewhere a limit to the right of the state to regulate the common useful and harmless activities of life, beyond which the state may not go without destroying those guarantees, and this statute has passed that limit."

In State ex rel. Milwaukee Medical College v. Chittenden, 127 Wis. 468, 534, 107 N. W. 500, 522, the court states:

"The power conferred was limited to reasonable protection of the public against danger of incompetent practitioners securing patronage, and is wholly of an administrative character. If the legislature were to go further than to conserve the public welfare, its action in that regard would be destructive,

not regulative, of rights and so would be outside of constitutional authority.''

In State v. Cromwell, 72 N. D. 565, 578, 9 N. W. 2d 914, 920, the court states:

''But, as we have said above, a regulatory statute enacted in the exercise of the police power must be reasonable. Its real purpose must be to protect the public health, morals or general welfare, and it must be reasonably required and suited to attain that purpose. It cannot masquerade as an exercise of the police power and arbitrarily invade personal rights or private property. It cannot disregard the constitutional guaranties.''

In S. S. Kresge Co. v. Mayor of City of Detroit [Couzens], 290 Mich. 185, 192, 287 N. W. 427, 430, 124 A. L. R. 543, 546, 547, the court states:

''The object of the present ordinance was not to protect the citizens of Detroit in their public health, safety, morals or general welfare, but was for the financial benefit of a few. In view of the fact that the selling of flowers and potted plants is a legitimate business, and that there has been no showing made of the existence of any evil in connection with the sale of flowers and potted plants, we are constrained to hold that the ordinance involves the infringement of the right of property or business under the guise of police regulations and is therefore void.''

Pursuant to the foregoing, we are convinced that the act of instructors of cosmetology working on the public has no such relation to the public health that would warrant the department's condemning such conduct under delegated police power.

V. We now come to the question whether the department had the power to refuse to renew plaintiff's license ex parte without giving plaintiff notice and an opportunity for a hearing. The trial court held that it had no such power. The court was right.

Some confusion exists among the decisions of the various appellate courts due to the fact that, in some instances, the language used fails to draw the distinction between the granting of licenses in certain occupations, as the sale of liquor or cigarettes, which the state has the absolute right to prohibit en-

tirely, and the granting of a license to operate a legitimate business which the state cannot prohibit but can only regulate. An example of the first type of business is found in the case of Ford Hopkins Co. v. City of Iowa City, 216 Iowa 1286, 1295, 248 N. W. 668, 672, involving the sale of cigarettes, wherein we point out that the legislature had the power to suppress the traffic entirely as inimical to the public good. Many courts have held that a license to engage in such a business is a mere privilege which can be withdrawn at will and is not entitled to protection under the due-process clause. However, at the end of our opinion in that case we state:

"In order not to be misunderstood, it is again repeated that we do not here decide whether the discretion possessed by the city council under the cigarette law is a legal or an absolute one."

In the field of legitimate enterprise, the police power is definitely limited to that of regulation only. This distinction is pointed out in Vincent v. City of Seattle, 115 Wash. 475, 478, 197 P. 618, 620, wherein the court states:

"It must be remembered that, unlike the cases involving the sale of intoxicating liquors in which by statute a city is given the sole and exclusive authority to regulate, restrain, license or prohibit the sale within its corporate limits, the operation of a place of public amusement, on private property, involves nothing which is necessarily inherently evil, and the limit of legislative power thereover is to regulate only."

In the case of Riley & Co. v. Wright, 151 Ga. 609, 614, 107 S. E. 857, 859, the court states:

"The insurance business is per se useful and lawful. The legislature can not destroy such a business at will, nor can it arbitrarily take away the right to carry on such business. Where the business is inherently harmful, and permissible only under license of the State, for instance, the licensee accepts his license subject to the right of the State to outlaw the business and to revoke his license. The cases cited and relied upon by counsel for the defendant are therefore not in point."

In Rehmann v. City of Des Moines, 200 Iowa 286, 292, 204

N. W. 267, 270, 40 A. L. R. 922, we recognize the foregoing distinction and state:

"A building permit issued by a municipality in pursuance of restrictions and regulations in force is manifestly something more than a mere license revokable at the will of the licensor. The requirement that a permit be obtained before proceeding with the erection of the building was invoked only because of the right of the city, in the proper and reasonable exercise of the power delegated to it, to enact regulations and restrictions governing the kind of building and character of material to be used therein, to be erected within its limits. The authority delegated to municipalities to impose building restrictions and regulations does not carry with it the authority to arbitrarily prevent the owner from improving his property. Independent of the power to regulate and to enact restrictions, the owner of the property has the absolute right to improve it and use it in any lawful way or for any lawful purpose. In other words, the authority conferred upon the municipality is to restrict and regulate, and not to prohibit."

A license to engage in a lawful business or profession is a valuable right which cannot be destroyed in violation of the due-process clause. In Smith v. State Board of Medical Examiners, 140 Iowa 66, 69, 117 N. W. 1116, 1117, we state:

"Whether the right to practice medicine be classed as a property right, strictly speaking, or as a mere privilege, is not material; for, whichever name be given it, it is a valuable right which cannot be taken away without due process of law, the essential elements of which are notice and opportunity to defend. State v. Bair, 112 Iowa 466; Foule v. Mann, 53 Iowa 42; Beebe v. Magoun, 122 Iowa 94; Traer v. State Board of Med. Exam'rs, 106 Iowa 559."

The foregoing pronouncement was expressly followed in Craven v. Bierring, 222 Iowa 613, 618, 269 N. W. 801, 804, wherein we state:

"The possession by the plaintiff of a certificate to practice the profession of dentistry is a valuable right which cannot be taken away without due process of law. Smith v. Medical Ex-

912

aminers, supra. The constitutional requirement of due process, the essential elements of which are notice and an opportunity to be heard, is not invaded where the statute provides for notice and hearing before a legally constituted tribunal, with a right of appeal to the court.''

The position taken by this court is supported by a wealth of authority from other jurisdictions. In Abrams v. Jones, 35 Idaho 532, 546, 207 P. 724, 727, the court states:

''Due process of law is not necessarily satisfied by any process which the legislature may by law provide, but by such process only as safeguards and protects the fundamental, constitutional rights of the citizen. Where the state confers a license upon an individual to practice a profession, trade or occupation, such license becomes a valuable personal right which cannot be denied or abridged in any manner except after due notice and a fair and impartial hearing before an unbiased tribunal.''

In Abrams v. Daugherty, 60 Cal. App. 297, 302, 212 P. 942, 944, 945, the court states:

''Applying the rule to this case it would follow that, even in the absence of any provision in the statute, a broker is entitled to a notice and hearing before the commissioner can revoke his certificate. * * * The very basis of a judicial or quasi-judicial hearing at which property rights are determined presupposes some sort of process by which the interested party is put upon his notice as to the time, place, and nature of the hearing. * * * This is so not because the statute requires the filing of charges against the broker but because the constitutional guaranty of due process of law requires that he be allowed to appear and defend, and the established rules of procedure demand that the accused shall be given 'such notice of the nature of the charge against him as will enable him to formulate a defense.' ''

In the case of Ex Parte Robinson, 19 Wall. (U. S.) 505, 513, 22 L. Ed. 205, 208, in holding that a lawyer cannot be deprived of his right to practice without notice and a hearing, the court states:

"The principle that there must be citation before hearing, and hearing or opportunity of being heard before judgment, is essential to the security of all private rights. Without its observance no one would be safe from oppression wherever power may be lodged."

In People v. McCoy, 125 Ill. 289, 297, 17 N. E. 786, 788, the court states:

"The prosecution put defendant on the stand, and made him their own witness, and he distinctly stated, at their instance, that the notice found in the record was never in fact served upon him. The affidavit of service is not sufficient to overcome his testimony in that respect. It is contrary to the analogies of the law, that a proceeding, in its nature judicial, should be obligatory and conclusive upon a person not a party thereto, otherwise a party might be deprived of important rights, with no opportunity to defend against wrongful accusations. Whether the right to practice medicine or law is property, in the technical sense, it is a valuable franchise, and one of which a person ought not to be deprived, without being afforded an opportunity, by timely notice, to defend it."

In State v. Schultz, 11 Mont. 429, 431, 28 P. 643, the court states:

"It was assumed by the court below that the board possessed the power, under these clauses, of revoking the certificate of appellant without a notice of any charge preferred against him, or a hearing thereon. All the rulings conform to this view of the law, which is clearly erroneous, and subverts the most precious rights of the citizen."

In Northern Cedar Co. v French, 131 Wash. 394, 409, 230 P. 837, 843 [error dismissed 270 U. S. 625, 46 S. Ct. 204, 70 L. Ed. 767], the court states:

"The spirit of our laws and institutions demands that a citizen be not deprived of his property or rights without notice. This act does not even intimate that, before annulling a license, the director of agriculture must give the holder a right to be heard. Under it the director may make a secret investigation and

revoke the license before the holder thereof has any intimation that anything is being done with reference thereto. Manifestly the license is a thing of great value to the commission merchant, for under this law he may not prosecute his business at all without it. If it is revoked his business is destroyed, and yet he has not been given an opportunity to present his reasons why there should be no revocation. * * * The state contends that the license is nothing more than a privilege and may be revoked at any time without notice. It is not a license of that character. It may not be revoked arbitrarily as a matter of right and without cause. * * * It is further argued by the state that the requirement of notice applies only to judicial proceedings and not to those before administrative officers. We can see no reason for such a distinction. As much damage may be done to the holder of the license by an administrative officer annulling it as by its annulment through an order of the court.''

Pursuant to the foregoing authorities, it is manifest that plaintiff's license could not be revoked without notice and a hearing. The defendants do not seriously challenge this proposition. Their contention is that, granting plaintiff was entitled to notice and a hearing before his license could be revoked, it does not follow that he is entitled to notice and a hearing on his application for a renewal of his license. The argument is that, when his license expired, his rights were extinguished. We do not so interpret the requirements of due process. The reasoning of the cases above quoted from demonstrates the fallacy of the contention.

The cases from which we have quoted clearly announce fundamental principles, essential to the life of a free people living under a republican form of government. The right to earn a living is among the greatest of human rights and, when lawfully pursued, cannot be denied. It is the common right of every citizen to engage in any honest employment he may choose, subject only to such reasonable regulations as are necessary for the public good. Due process of law is satisfied only by such safeguards as will adequately protect these fundamental, constitutional rights of the citizen. Where the state confers a license to engage in a profession, trade, or occupation not inherently inimical to the public welfare, such license becomes a valuable

personal right which cannot be denied or abridged in any manner except after due notice and a fair and impartial hearing before an unbiased tribunal. Were this not so, no one would be safe from oppression wherever power may be lodged; one might be easily deprived of important rights with no opportunity to defend against wrongful accusations. This would subvert the most precious rights of the citizen.

██ VI. The state cannot, by issuing only annual licenses, ingeniously thwart these precious rights. As stated in Craven v. Bierring, supra, 222 Iowa 613, 619, 269 N. W. 801, 805, once an annual license is issued to a dentist, "Unless he has violated some of the provisions of the statute applicable to his profession, he is entitled to a renewal of his license as a matter of right * * *." This is because a dentist, doctor, lawyer, or the member of any other profession, does not devote the years of study and preparation necessary to qualify as a practitioner merely that he may be accorded the right to practice for one year. When he qualifies for the practice, he does so for life. That right cannot be taken from him except by due process of law. If he has violated the canons of his profession he may be denied the right to continue therein, either by a revocation of his current license or by a refusal to renew it. But, in either event, the determination that his conduct renders him unworthy to continue in the practice constitutes the exercise of a judicial function which requires notice and an opportunity to be heard. This is also true of the right to pursue any other lawful business or vocation as well as a profession.

In Brecheen v. Riley, 187 Cal. 121, 124, 200 P. 1042, 1044, the court states:

"It is firmly established that it is the right of every person to pursue any lawful business or vocation he may select, subject to such legal restrictions and regulations as the proper governmental authority may impose for the protection and safety of society, and that such right is valuable and must be protected and secured, and cannot be taken from those who possess it, without 'due process of law.' * * * It is apparent that the commissioner is acting in a quasi-judicial capacity when passing upon applications for a license, and when hearing petitions to revoke, and revoking, a license issued under the act, for he is deciding

property rights and determining what shall be decreed in the matters before him, all of which is the exercise of a 'judicial function' * * *.''

The plaintiff heretofore has been determined to be qualified to operate a school of cosmetology. He has made a substantial investment in reliance thereon. He possesses a valuable personal right, which the courts are bound to protect and to secure to him. It is our duty to see that this personal right is not taken from him without due process of law. If his conduct has demonstrated that he is no longer worthy to operate his business, a determination of that fact constitutes the exercise of a judicial function. That function can be exercised only after notice and an opportunity to be heard. Defendants undertook to destroy plaintiff's business without according to him that fundamental right. This they cannot do. The court was right in so holding.

VII. As heretofore pointed out, plaintiff challenges the constitutionality of no statute. The challenge is to defendants' conduct under the statutes. The statutes do not specifically provide for notice and a hearing. But, in view of the constitutional requirements, the fact that notice and a hearing should be afforded to plaintiff is to be inferred from the provisions of the statutes. In Smith v. State Board of Medical Examiners, supra, 140 Iowa 66, 70, 117 N. W. 1116, 1117, we state, as follows:

''But, although a statute may not expressly provide for notice, it will not be held unconstitutional or invalid if the requirement of notice may be fairly implied therefrom. In some of the cases it is said that notice is to be implied from the very fact that it is a constitutional requirement, irrespective of particular provisions in the statutes apparently contemplating that notice is to be given. In re Road, 109 Pa. 118; Kearney Twp. v. Ballantine, 54 N. J. Law, 194 (23 Atl. 821); Baltimore & O. R. Co. v. Pittsburg, W. & K. R. Co., 17 W. Va. 812; Paulsen v. Portland, 149 U. S. 30 (13 Sup. Ct. 750, 37 L. Ed. 637); Wood v. Farmer, 69 Iowa 533; Iowa Eclectic Medical College v. Schrader, 87 Iowa 659 (55 N. W. 24, 20 L. R. A. 355).''

As stated in Division III of this opinion, supra, any implied powers of the defendants must necessarily be such as conform to constitutional limitations. The department, by clear implication, has the right to prescribe reasonable rules for the denial of the renewal of a license to operate a school of cosmetology. However, such rules must afford an applicant notice and a hearing before the renewal of the license can be denied.

By reason of the foregoing, we hold that the decree of the trial court is erroneous insofar as it holds invalid the rules referred to in items 1, 2, 3, 4, 5, and 7 of defendants' order. The decree is affirmed insofar as it holds invalid the rule referred to in item 6 thereof and insofar as it determines that plaintiff's license cannot be terminated by defendants without notice or a hearing. The provision that plaintiff's license shall be renewed solely upon the payment of the annual fee is too broad. Such renewal may be refused if, after notice and a hearing, plaintiff is duly found to be unworthy of such renewal.

Accordingly, the decree is affirmed in part, reversed in part, and the cause is remanded for the entry of a decree in harmony with this opinion.—Affirmed in part; reversed in part and remanded.

SMITH, C. J., and HALE, WENNERSTRUM, MANTZ, BLISS, OLIVER, and GARFIELD, JJ., concur.

MULRONEY, J., dissents.

MULRONEY, J. (dissenting)—I. In the majority opinion there is, in Division IV, an imposing array of authorities where this court and other supreme courts have discussed the constitutionality of statutes that regulate business and professions. From these authorities the majority is convinced "that the act of instructors of cosmetology working on the public has no such relation to the public health that would warrant the department's condemning such conduct under delegated police power." Since the constitutionality of the statute is not involved in this division, nor in the whole case, for that matter, I find myself in agreement with the rules of law established by the authorities but unconvinced that the board's regulation against "instructors working on the public" was wrong. We need no discussion of

constitutional issues to decide whether it was right or wrong. The majority opinion correctly holds the board had authority to make reasonable rules and regulations. The rules and regulations were obviously for the purpose of enabling the board to carry out its duties with respect to approving or not approving school licenses. The only question is whether the regulation against instructors working on the public was a reasonable rule or regulation. To answer this question I turn to the statute. In section 2585.21, Code of 1939, it is provided:

"Managers of shops or other places where cosmetology is practiced, who directly or indirectly supervise the work of operators, shall be licensed cosmetologists."

The argument of the board is that if the instructors work on the public the school becomes a shop. The manager of the school need not be a licensed cosmetologist. So, if a person, not a licensed cosmetologist, such as Gilchrist, conducts a school with instructors working on the public, he becomes the proprietor of a shop without being a licensed cosmetologist. That this is not a remote possibility is well demonstrated by this record where the instructors devoted a great deal of time to working on the public. The comment in the majority opinion that "In many professional schools, instructors are permitted to also engage in private practice" is easily answered by pointing out that in Gilchrist's school the money paid for the work the instructors did on the public was paid to Gilchrist and the instructors were paid a salary. I am not prepared to say that the regulation against instructors working on the public was wrong. The legislature thought it necessary to provide that shop proprietors be licensed. The regulation would seem to me to be carrying out the legislative intent.

II. My chief disagreement with the majority opinion, however, is with Divisions V and VI, where it holds the board cannot refuse to approve Gilchrist's application for a cosmetology-school license without a notice and hearing. Here, too, I find it unnecessary to discuss the authorities cited. None of them reaches the question involved. Most of them deal with the necessity for notice and hearing in case of revocation of licenses. And, as the majority opinion points out, the appellant

does not challenge the necessity of notice and hearing in the case of revocation of licenses. The basic question is whether an administrative board that is charged with the duty of approving or not approving a license for one year can refuse approval for a renewal applicant without notice and hearing. I say that it can. By so saying I do not mean that the board has been granted unbridled administrative discretion. All of the authorities agree that such a statute as here only invests the board with reasonable discretion. State v. Conragan, 58 R. I. 313, 192 A. 752; McDonough v. Goodcell, 13 Cal. 2d 741, 91 P. 2d 1035; Noble v. English, 183 Iowa 893, 167 N. W. 629.

It will be noted here that the license is actually issued by the state board of health. The entire chapter dealing with the practice of cosmetology and the operation of cosmetology schools, chapter 124.2, is found in Title VIII of the Code of 1939, which purports to legislate on the subject: "The Practice of Certain Professions Affecting the Public Health." We have, then, a legislative act that regulates a business that affects public health. The regulation takes the form of a license requirement that is issued by the department of health and can only be obtained upon the approval of the cosmetology board. Surely, the statute as it is written is perfectly constitutional, even though it provides for no notice and hearing. See 33 Am. Jur. 377, 379, section 60, where the rule is stated:

"It is not essential to due process of law that a hearing be provided an applicant for a license by an administrative board empowered to issue such a license, especially when the business or activity to be licensed is subject to regulation under the police power, unless the statute delegating power to the board expressly or impliedly requires one to be afforded the applicant."

I feel that the majority would probably hold that, under this statute, notice and hearing would not be essential before refusal of a new applicant's license. The majority opinion places the refusal to grant a renewal license on the same basis as the revocation of an existing license. No authority is cited for this rule. This is just announced as a premise. The argument is that refusal to renew and revocation are the same, and, since notice and hearing are necessary in case of revocation of an ex-

isting license, then notice and hearing are necessary in case of refusal to renew. The fallacy in this argument lies in the first premise. Refusal to renew and revocation are not the same.

A case that is much in point is State v. Conragan, supra. Here the defendants were indicted for operating a school of hair-dressing and cosmetic therapy without a license. It appeared the department had refused to renew the defendants' license. The statute, like ours, provided:

"Any certificate of approval issued by said department to any school shall be good for one year from the date when issued, unless sooner revoked. Said certificate may, so long as such school continues to meet the approval of said board, be renewed from year to year upon payment of a fee of seventy-five dollars for each renewal." [Pub. L., 1936, chapter 2362, section 4.]

Certain constitutional questions were certified to the supreme court, and the court had this to say with respect to this statute, 58 R. I. 313, 318, 192 A. 752, 755:

"The statute in the instant case is directed at the public policy that shall be followed in relation to the practice of hair-dressing and cosmetic therapy for hire and reward, so that these practices shall not become, in their mode of exercise, dangerous or injurious to the health of the community. We would have to shut our eyes to existing conditions to regard the precaution unreasonable or the legislation to effect it as a wanton inter-ference with personal liberty. The power of the legislature to regulate trades and occupations likely to be injurious to the inhabitants of the state and to punish as a crime any act in violation of its policy is clearly within the police power of the state and no longer open to question. It is a matter of legis-lative will alone. If the legislation is not unreasonable or arbi-trary, the courts are not concerned with its wisdom, policy or expediency."

In this Rhode Island case the very question here under dis-cussion was raised, for the opinion states:

"The defendants contend that the due process clause is violated because the department may refuse to renew a certificate of approval without previous notice and hearing."

In upholding the constitutionality of the statute, the court, in this case said:

"A certificate to operate a school of hairdressing and cosmetic therapy is nothing more than a license to do that which the state otherwise declares to be unlawful. Although the privilege conferred by the certificate may be valuable, it is neither a contract nor a property right within the constitutional meaning of those words. The permission thus granted remains at all times subject to complete control by the state. It may be denied or revoked for cause or it may be entirely annulled by a change of policy or legislation in regard to the subject. The refusal to renew a license of this character is not a deprivation of property without due process of law."

In this case the Rhode Island court did comment on a general provision in the statute granting appeal rights to "any person aggrieved" by a board order, but the appeal only granted the same review an action such as this would grant. It would protect the applicant against arbitrary action.

In McDonough v. Goodcell, supra, 13 Cal. 2d 741, 751, 91 P. 2d 1035, 1041, 123 A. L. R. 1205, the court had under consideration the California statute licensing the bail-bond business. This statute did not provide for any notice and hearing but the commissioner who was authorized to grant the license did hold a public hearing. When the applicant was refused a license he contended in the courts that the statute was unconstitutional because it did not provide for notice and hearing and it deprived him of his property (his bail-bond business) without due process. In upholding the constitutionality of the statute, the court did not place it on the ground that notice and hearing were given but stated:

"The answer is that the notice and hearing which it is insisted the statute fails to provide for could in any event be only such notice and hearing as would afford due process when it is contemplated that some constitutional right is claimed to be invaded. Here, the hearing was not for the purpose of affording the petitioners an opportunity to resist an invasion of a constitutional right but was for the purpose of enabling the commis-

sioner fairly and intelligently to determine whether a right should be granted to the petitioners, namely, a right to engage in a business the conduct of which, without a permit, was unlawful.

"Nor did the order of the commissioner denying the permit deprive the petitioners of their property without due process. True, the statute had the effect of terminating their right to do business without a permit, but owing to the nature of the business, the legislature had the right to so terminate it conditionally, under its constitutional power to regulate such business. 'Where the purpose of the statute is to protect the public from unfit persons, it is constitutional, although it disqualifies a person, by reason of past acts, from continuing in the practice of his profession, or from remaining in his business.' (12 Corpus Juris, p. 1106, sec. 815, and cases there cited.)"

Presumably, any other method that would have enabled the commissioner to ascertain the facts would have sufficed.

Another Rhode Island case that discusses the necessity for notice and hearing before the granting of a license is Thayer Amusement Corp. v. Moulton, 63 R. I. 182, 187, 197, 7 A. 2d 682, 685, 689, 124 A. L. R. 236, where the question of a license to exhibit a moving picture was involved. The court stated one of the issues to be:

"2. Did the bureau's refusal to grant the petitioner a formal hearing on its applications constitute a violation of the enabling statute and a denial of due process of law?"

After citing many cases, among them State v. Conragan, supra, the court answered the question in the negative, stating:

"It may be that there would be less danger of arbitrary action if a hearing were made a prerequisite; but that is a matter for legislative consideration, and not for us. The bureau therefore did not commit an error of law in refusing to grant the petitioner's petition for a hearing and opportunity to present evidence * * *."

In Noble v. English, 183 Iowa 893, 898, 167 N. W. 629, 631, this court upheld the right of the insurance commissioner to re-

fuse either a license or a renewal license to an insurance agent where the statute authorizing him to so act did not provide for notice and hearing. The act provided that insurance agents must procure a license from the commissioner which expired at the end of the insurance year for the company represented. The plaintiff was denied a license under a ruling by the commissioner that nonresidents would not be granted agents' licenses "effective with beginning of 1917 insurance year." In upholding the constitutionality of the law and the action of the commissioner, this court stated:

"This does not give to the commissioner arbitrary power to capriciously refuse a license, but does vest in him the right to determine whether or not the person applying is one whose appointment will conserve the good of the state and of the public; and when good cause appears for denying a license to an applicant, and good cause exists, he is within the exercise of the delegated power in denying a license, and cannot be forced by mandamus to grant it until it is made to appear affirmatively that good cause for such refusal does not exist."

I do not feel that the applicant for a renewal license is in any better situation than the first-year applicant. Surely the board has the same duty as to each, namely, the duty to approve the application if, in the exercise of honest discretion, the same should be approved. Why should the applicant for renewal license receive a notice and be entitled to a hearing and the original applicant not? Is it because he has a school that will be worthless if he does not receive the license? The record here shows Gilchrist was in operation as a school for several months before he received his first license. Besides, the fact that a member of the regulated classes may suffer economic losses not shared by others has never been a barrier to the exercise of police power.

The force of the majority opinion is to convert the annual license into a perpetual license. For, according to the majority, the holder of an annual license becomes entitled to all the rights of the holder of a perpetual license. The board must thereafter renew from year to year. He cannot be deprived of a license in the ensuing years without a notice and hearing. This is the extent of the rights of the holder of a perpetual license. In fact,

the majority opinion contains a judicial condemnation of annual licenses, for it states:

"Where the state confers a license to engage in a profession, trade, or occupation not inherently inimical to the public welfare, such license becomes a valuable personal right which cannot be denied or abridged in any manner except after due notice and a fair and impartial hearing before an unbiased tribunal. * * * The state cannot, by issuing only annual licenses, ingeniously thwart these precious rights."

I do not feel that because the board chooses to proceed as the law requires it, it should merit criticism. The state cannot, under this statute, issue anything but an annual license, and the "precious rights" will not be "ingeniously thwarted" by such annual licenses so long as courts sit in Iowa with the power to annul the arbitrary action of any board. The case of Craven v. Bierring, 222 Iowa 613, 269 N. W. 801, cited by the majority, is not authority upon the question involved, for the dentist statute there reviewed specifically provided for notice and hearing before the licensee could be refused a renewal.

This law was in effect when Gilchrist started his school, though I do not think that makes much difference. He knew that he was engaging in a business for which he could be criminally prosecuted unless he had a license. He knew that he could get a license for one year only. I feel that if he knew the law, he knew he could receive renewal licenses each year upon payment of the $100 and the board could not arbitrarily and capriciously refuse to grant this renewal. He knew, or should have known, that if the board's action was not arbitrary or capricious, his business would be destroyed. I feel the only issue on this appeal is whether that action was arbitrary or capricious. Upon this issue the evidence weighs heavily in favor of the board. The evidence of the inspectors (eleven different inspections from May 1940 to September 1942), where the inspectors found so much that was objectionable, fully warranted the refusal to approve this school. The record shows that copies of the inspectors' reports were furnished Gilchrist and he repeatedly agreed to make the changes recommended in the interests of cleanliness and sanitation, but never did. Combs, sterilizers,

towels, and pads were unsanitary. The classroom without a window or ventilator, and many other conditions shown by the evidence to exist in this school, fully warranted the action taken. The plaintiff failed to show the action taken was arbitrary, and that means the board's action should be upheld. I would reverse the case.