Seymour A. Kestek, J.
The defendant was arrested on July 9, 1959, for an alleged violation of subdivisions 1, 2, 3 and 4 of section 722 of the Penal Law of the State of New York. The arrest and the incident, upon which it was predicated, occurred at the Montieello Raceway security office, on the property of the Sullivan County Harness Racing Association, Inc., in the corporate limits of the Village of Montieello, in the afternoon of that day.
The testimony indicates that the defendant was in conversation with several persons at or near the main line ticket windows when he was approached by a plain-clothes security officer, Bernard Weinstein, employed by the Montieello Raceway, who *726 asked him to come into the security office, at which time officer Weinstein informed the defendant that he was considered an “undesirable person” and that this determination was made by chief of security, Jacob Iberger.
There was no contention by the prosecution, that this determination was made as a result of any improper acts or conduct on the part of the defendant, preceding this conversation, or any such acts or conduct at any other time when the defendant had been admitted to the raceway.
Concededly, the acts or charges against the defendant arose after he had been ordered to leave, refused, and the special officers of the association’s security police, attempted to physically eject him from the premises, which ejectment the defendant apparently resisted with force and which resistance took place at the entranceway of the security office, while the door thereto was open, and numerous passers-by, patrons of the raceway, thereby witnessed the incident, although none of said patrons were produced as witnesses. There was testimony that obscene language was exchanged between the defendant and the security police. It is inescapable, that if there was a breach of the peace by the defendant, it was occasioned by his resistance to the efforts of the security police to eject him, and from the testimony, it could have been, the language or acts of the police themselves, which occasioned the breach of the peace, if any.
The sole issue herein, is whether or not, the special officers of the raceway, had the authority under the rules and regulations governing their employment, to forcibly eject a patron, who concededly paid a proper admission and who was not guilty of any act or failure to act which might be construed as misconduct.
The chief of security testified, that he made his determination, that the defendant was an undesirable person, at 4:30 o’clock in the afternoon of July 9, 1959, and thereafter left no instructions with his patrolmen or gate attendants, concerning the sale of an admission ticket to the defendant, nor was there any testimony that defendant was apprised of the chief of security’s determination, prior to the incident which occurred at the security office. There was however, testimony to the effect, that the chief of security had confused defendant with one “ Jalop ” a person who was known to the chief of security as a book-maker.
The prosecution relies on section 11 of the Laws relating to Racing Corporations and Pari-Mutuel Revenue (L. 1926, ch. 440; *727 L. 1940, ch. 254), as authority for the attempt by the raceway officers to eject the defendant. This court does not think that that section is intended to give such broad powers to a private special patrolman, hired by a private corporation for the special purposes enumerated in the enpowering section, above referred to, and this section, which grants such powers to a private corporation, powers usually reserved to a sovereign authority, or a duly organized municipal corporation, should be strictly construed.
That section specifically states, that special policemen may be employed for the purpose of preserving order and preventing offenses against the laws prohibiting gambling. The duties of these officers are to preserve order and to protect the property of the corporation, eject or arrest those persons improperly within the grounds of the corporation, or who shall be guilty of disorderly conduct, or who shall neglect or refuse to pay the fees, or to observe the rules prescribed by the corporation, to prevent violation of all laws relating to gambling, book-making, etc. There is no testimony which would tend to show, that prior to the use of force, by the security officers, the defendant was disorderly, involved in gambling or book-making, attempted to harm the property of the association or was improperly on the grounds of the track or refused to pay the proper admission fee.
The above rules or regulations specifically state that it was not made to allow special track officers to supersede the authority of duly appointed police officers of the municipality in which the particular track is resident.
I think, that the security force attempting to eject the defendant, exceeded their authority, and the defendant had every right to resist with sufficient force, to prevent his being molested. (People v. Tinston, 6 Misc 2d 485.)
“ To use or attempt, or offer to use, force or violence upon or towards the person of another is not unlawful in the following cases: * * *
“ 3. When committed either by the party about to be injured or by another person in his aid or defense, in preventing or attempting to prevent an offense against his person, or a trespass or other unlawful interference with real or personal property in his lawful possession, if the force or violence used is not more than sufficient to prevent such offense ” (Penal Law, § 246).
It is well to note, that the police, be they regular, municipal or private, are charged with the duty of preserving the public *728 peace, their powers and authority (especially the power to arrest) are strictly defined and limited by law. (Code Crim. Pro., §§ 177, 183; People v. Cherry, 307 N. Y. 308.)
Although the jurisdiction of this court, necessarily requires it to deal exclusively with minor offenses of an unsensational nature, yet it is the duty of this court, no matter how minor a charge, or how insignificant the penalty, to guarantee to all defendants who appear before it the rights granted to them in the Constitution of the United States of America. If this court, a court of first resort, denies these rights, then to all intents and purposes, such rights are academic and nonexistent.
The Fourth Amendment of the Constitution of the United States, and section 12 of article I of the New York State Constitution, guarantee to the people the right to be secure in their persons * * * against unreasonable searches and seizures.
The insignificance of the offense does not give to the security police authority over and above that specifically granted to them by statute, and acts in excess of that authority against a person, deprive that person of his constitutional guarantees.
The chief of security, acting perhaps in the best interest of the raceway, nonetheless circumvented the law by his order to have the defendant physically ejected from the premises. We must ever be on the alert to circumvent and repair cracks in the foundation of civil rights. A policeman must be the servant of the public rather than its master, if democracy is to survive in the face of continued threats from abroad.
The proper method of procedure in this case was to summon the Monticello Police Department and their officers to then eject the defendant and to charge defendant with the violation of section 2036 of the Penal Law of the State of New York. (Unlawful intrusion on real property.)
Although the defendant admitted that he had been convicted of book-making, some 23 years ago, the mere determination, that a person is undesirable, does not give the special security police, the right to eject by force as they would have had, had they caught the defendant in an act of book-making or other misconduct, one of those situations specifically prescribed and set forth in section 11 of the racing laws as an instance when such specially appointed police officers may so eject or arrest.
This court, in examining subdivision h of rule 20 of the Rules and Regulations of the State Harness Racing Commission, determines that that section does not empower the chief of security with the right to arbitrarily decide that a person is *729 desirable or is undesirable and then have said person arbitrarily ejected from the premises. It would, perhaps, best serve harness racing if the commission re-examine and rewrite subdivision h of rule 20 and therein specifically empower a person or persons who may make a determination of the desirability or undesirability of a particular patron, together with the proper method and procedure for arriving at such . determination.
The defendant in this case, a licensee of the Harness Racing Commission, before being declared undesirable, in the opinion of this court, was entitled to have notice and a hearing on that question. The determination by the chief of security, that the defendant is an undesirable person, in actuality, deprives him of the right to use his license to earn a living. The right to earn a living is among the greatest of human rights and when lawfully pursued, cannot be denied. Where the State confers' a license to engage in a profession, trade or occupation, not inherently inimical to the public welfare, such license becomes a valuable, personal right which cannot be denied or abridged in any manner expect after due notice and a fair and impartial hearing before an unbiased tribunal. Were this not so no one would be safe from oppression wherever power may be lodged; one might be easily deprived of important rights with no opportunity to defend against wrongful accusations. This would subvert the most precious rights of the citizen. That right cannot be taken from him except by due process of law. (Gilchrist v. Bierring, 234 Iowa 899.) This is an important factor in light of the fact that the entire incident might have been the result of mistaken identity, and any continued determination that defendant was undesirable after the time when the chief of security became aware of defendant’s true identity, appears to be arbitrary, capricious and unreasonable, in addition to being improper and a deprivation to the defendant of due process of law. It is therefore the determination of this court, that the security police, employed by the Sullivan County Harness Racing Association, Inc., exceeded the authority invested in them in their attempted ejectment of the defendant, and that the defendant’s actions did not amount to a breach of the peace but were provoked and justifiable under the circumstances.
The motion to dismiss the motion is therefore granted, and the defendant is discharged.