**A. Scott DEVOUS, Appellant (Petitioner),**

v.

**WYOMING STATE BOARD OF MEDICAL EXAMINERS, Appellee (Respondent).**

**WYOMING STATE BOARD OF MEDICAL EXAMINERS, Appellant (Respondent),**

v.

**A. Scott DEVOUS, Appellee (Petitioner).**

Nos. 91–212, 91–213.

Supreme Court of Wyoming.

Jan. 22, 1993.

Richard Barrett, Hathaway, Speight, Kunz, Trautwein & Barrett, Cheyenne, for petitioner.

Joseph B. Meyer, Atty. Gen., Don W. Riske, Sp. Asst. Atty. Gen., Cheyenne, for respondent.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT,* and GOLDEN, JJ.

THOMAS, Justice.

The primary issue to be resolved in this case is whether A. Scott Devous (Dr. Devous) was deprived of his constitutional right to due process in a proceeding to suspend his license to practice medicine. Dr. Devous' claims of deprivation of due process encompass inadequate notice; the impropriety of drawing· an adverse inference based upon his exercise of his constitutional right not to incriminate himself; and the bias of a member of the board. The Wyoming State Board of Medical Examiners (Board) also has appealed from the decision of the district court contending the court erred in refusing to: sustain portions of the order of the Board that required Dr. Devous to show good conduct as a requisite to license reinstatement; restrict Dr. Devous' license upon reinstatement by requiring co-signature of another physician on prescriptions for Schedule II drugs; and issue a public reprimand of Dr. Devous. The Board also contends that the court

erred in failing to sustain the imposition of costs in the order of the Board relating to the licensure proceedings. We hold that Dr. Devous' due process rights were infringed in the suspension proceeding, and the order of the district court sustaining the ninety-day suspension of Dr. Devous' license should be reversed. We affirm the refusal of the district court to order the imposition of costs against Dr. Devous in connection with the licensure proceeding.

The appeal of Dr. Devous and the appeal of the Board were consolidated for purposes of this appeal. The cases, however, were briefed separately by the parties. In his brief as appellant, Dr. Devous sets forth these issues:

Was the 90–day suspension of Dr. A. Scott Devous' license unlawful?

A. Did the board violate Dr. Devous' constitutional right to notice of the charges against him?

B. Does license suspension based solely on the exercise of a physician's privilege against self-incrimination violate the Fifth and Fourteenth Amendments of the United States Constitution?

C. Was Dr. Devous denied a fair and impartial hearing by reason of [another physician]'s bias?

As appellee, the Board restates the issues in this way:

I. Whether the Appellee violated the Appellant's Constitutional rights to notice of charges against him at the informal interview stage of the disciplinary proceedings.

II. Whether the Board could properly find a violation of W.S. § 33–26–402(a)(xxiii) based upon Appellant's exercise of his privilege against self-incrimination.

In its Brief of Appellant, in its separate appeal, the Board presents this statement of the issues:

I. Whether the Board's April 22, 1991, Findings of Fact, Conclusions of Law, Decision and Order should be set aside.

---

* Chief Justice at time of oral argument; retired 1/1/93

(a) Whether the Order should be set aside due to the hearing officer's failure to disqualify [another physician] from the hearing panel.

(b) Whether the Order should be set aside due to a lack of substantial evidence in the record to support the Board's Findings of Fact, Conclusions of Law, Decision and Order.

II. Whether the Board is entitled to impose costs as shown by its verified Bill of Costs upon Respondent.

In answering the Board's appeal, Dr. Devous quotes and accepts that statement of the issues without submitting any additional statement.

Some background information is essential to an understanding of the dispute between Dr. Devous and the Board. In 1983, Dr. Devous was convicted, in the United States District Court for the District of Wyoming, of felony charges that related to his misuse of Demerol, a schedule II controlled substance. Dr. Devous served less than four months of his one-year sentence, and he was released from his five-year probation in December of 1985. Following his parole, Dr. Devous completed a family practice residency in Tennessee and, in 1989, he earned an M.A. degree in Public Health Administration.

Dr. Devous had voluntarily relinquished his license to practice medicine in the State of Wyoming around July 15, 1983. On January 13, 1987, he wrote to the Board requesting that it re-issue his license to practice medicine so he could sit for the American Board of Family Practice certifying examination. About April 6, 1987, Dr. Devous also submitted an application to the Board to be licensed to practice medicine and surgery in the state of Wyoming. On June 1, 1987, the Board issued license 3990–A to Dr. Devous, in accordance with his application and after he had appeared before the Board.

In February, 1990, Dr. Devous began treating patients at the Wright Medical Clinic. Campbell County Memorial Hospital, which owned the clinic, employed him under a locum tenens (temporary) contract. Within days after Dr. Devous began seeing patients at the clinic, he received a letter from the Board asserting that his license was subject to certain conditions or restrictions that he allegedly had violated since his return to Wyoming. On June 4, 1990, an informal discussion was held at which the participants were Dr. Devous, two Board members, and the Board's attorney. Dr. Devous was not advised that the Board would be voting on revocation of his medical license for the alleged violations of the conditions and restrictions on his license. Those conditions and restrictions were alleged to be: (1) prior notification of his intention to return to Wyoming; (2) his submission to random drug testing if he did return to Wyoming; and (3) his involvement in an impaired physician's support group.

On June 8, 1990, the Board revoked Dr. Devous' license to practice medicine on the grounds that he had violated the conditions set forth above. Dr. Devous' request for a contested court hearing was denied by the Board. He then filed a Petition for Judicial Review of Administrative Action in the District Court of the First Judicial District asserting the violation of his substantive and procedural due process rights, including notice of the charges against him; the opportunity to present evidence; and the opportunity to cross-examine witnesses. At that juncture, the Board entered an order withdrawing the revocation of Dr. Devous' license, and it filed a complaint and notice of contested case hearing, setting the issue of the revocation of his license for a contested case hearing before a retired jurist.

One week before the contested case hearing which was scheduled in front of the retired jurist, the Board required Dr. Devous to attend another informal interview in Casper. Dr. Devous received a letter from the Board, dated October 2, 1990, directing him to bring to the interview certain documents, consisting mainly of specific patient records. The letter did not incorporate any notice of facts or conduct that would warrant any intended Board action. In addition, while the letter was drafted by the executive secretary of the Board, it was

never signed, nor was it introduced or received into evidence even though the hearing officer, with respect to those matters, specifically ordered that it be admitted into evidence. Dr. Devous attended this "informal interview," but he invoked his constitutional rights against self-incrimination on several occasions. His motivation was to avoid anything that might incriminate him because of a fear that something he said might be used against him in a subsequent criminal proceeding.[1]

In its Decision and Order, the Board relied upon Wyo. Stat. § 33–26–402(a)(xv), (xviii), (xxiii), and (xxvi) (1987). These respective statutory provisions provide:

(a) The board may refuse to grant or renew, revoke, suspend or restrict a license or take other disciplinary action on the following grounds:

\* \* \* \* \* \*

(xv) Failure to appropriately supervise or collaborate with nonphysicians to whom the licensee has delegated medical responsibilities;

\* \* \* \* \* \*

(xviii) Willful and consistent utilization of medical service or treatment which is inappropriate or unnecessary;

\* \* \* \* \* \*

(xxiii) Failure to submit to an informal interview or a mental, physical or medical competency examination following a proper request by the board;

\* \* \* \* \* \*

(xxvi) Unprofessional or dishonorable conduct not otherwise specified in

this subsection, including but not limited to:

(A) Any conduct or practice:

(I) Contrary to recognized standards of ethics of the medical profession;

(II) Which does or may constitute a substantial risk of:

(1) Danger to the health or safety of a patient or the public; or

(2) Impairing a physician's ability to safely and skillfully practice medicine.

The contested case hearing involving the violations of the alleged conditions or restrictions upon Dr. Devous' medical license went on as scheduled, and the retired jurist who presided at that hearing filed his decision on December 5, 1990. He ruled that Dr. Devous had a full and unrestricted license to practice medicine in Wyoming. Apparently judicial review was not pursued with respect to that determination, and the findings of fact and conclusions of law in that proceeding are not at issue in this appeal. The matter does serve to demonstrate the vigor with which the Board fulfilled its statutory duties with respect to Dr. Devous' license.

On October 15, 1990, the day before the contested case hearing before the retired jurist, the Board filed a new complaint and notice of a contested case hearing pursuant to Wyo. Stat. §§ 33–26–101 to –511 (1987), and specifically asserting grounds identified for discipline in Wyo. Stat. § 33–26–402. The new complaint was presented by two of the Board members who were present at the informal interview in Casper on

1. It should be noted that Wyo.Stat. § 33–26–408(e) (1987) does not insulate Board records concerning a physician who is the subject of a criminal investigation, providing instead:

This subsection shall not be construed to prohibit the United States or the state of Wyoming from obtaining information from the board concerning a physician who is the subject of a criminal investigation. Upon petition to a state or federal district court, supported by affidavit, the judge may order the Wyoming board of medical examiners to release records of any proceedings, testimony of witnesses, and reports or investigation for in-camera inspection by the judge, or the judge may deny the petition for failure to show good cause. The petition shall state the na-

ture of the criminal investigation and the identity of the physician who is under investigation. If the judge grants the petition and orders the board to produce the board's records for in-camera inspection, the board shall comply within ten (10) days after entry of the order. Upon receipt of the records, the judge shall inspect them to determine what material, if any, is relevant to the criminal investigation. Material deemed to be relevant shall be made available to the investigation if otherwise admissible under the Wyoming Rules of Evidence. All records and material deemed by the court to be irrelevant or otherwise inadmissible under the Wyoming Rules of Evidence shall be returned to the board and the contents thereof shall not be divulged.

October 9, 1990. The new case was set for a contested case hearing approximately one month later before an attorney appointed by the Board as the hearing officer.

Four Board members other than those who presented the new complaint were present at the contested case hearing on November 19, 1990. After voir dire had been conducted by the hearing officer and the parties, Dr. Devous moved to disqualify three of the four Board members. The hearing officer granted Dr. Devous' motion with respect to two of the Board members, but denied the motion with respect to another physician. Approximately four months later, Dr. Devous was furnished a copy of the hearing officer's proposed findings of fact and conclusions of law, together with a proposed decision and order. The Board adopted, substantially, the findings of fact and conclusions of law of the hearing officer, but it imposed additional penalties against Dr. Devous that went beyond those recommended. The penalties included a public reprimand; a ninety-day suspension; a showing of good conduct as a requisite to reinstatement of the suspended license; a two-year license restriction after reinstatement, which required that he obtain the co-signature of another physician before prescribing or administering schedule II controlled substances; and assessment of attorney fees and costs in the sum of $12,509.97. These cases on appeal emanate from the recommended findings of fact and conclusions of law by the hearing officer in this latter proceeding and the decision and order of the Board based upon them.

On May 30, 1991, Dr. Devous filed a Petition for Judicial Review of Administrative Action together with a Motion for Stay of Enforcement of the Board's ninety-day suspension order. Before any ruling was issued, the ninety-day license suspension period had expired. On August 5, 1991,

the district court published an opinion letter to the parties in which it announced that it would set aside several aspects of the Board's decision including the assessment of attorney and hearing officer fees; the requirement that Dr. Devous make a showing of good conduct as a requisite to license reinstatement; the restriction on his license after reinstatement requiring co-signature by another physician for any schedule II controlled substance prescriptions; and the reprimand. The district court did rule that the Board appropriately imposed a ninety-day suspension based upon its conclusion that Dr. Devous violated Wyo. Stat. § 33–26–402(a)(xxiii). Specifically, the court held that Dr. Devous failed to participate in the informal interview of October 9, 1990 because of the exercise of his rights under the Fifth Amendment to the Constitution of the United States. The decision letter of the district court was incorporated by reference in its Order Granting Partial Relief.

Dr. Devous appealed from that portion of the Order Granting Partial Relief and the decision letter of the district court that upheld the ninety-day license suspension. The Board appealed from that portion of the court's order that set aside the several aspects of its decision discussed above.

The Medical Practice Act of 1987 (Wyo. Stat. §§ 33–26–101 to –511 (1987)) [2] provides for judicial review of the actions of the Board pursuant to the Wyoming Administrative Procedure Act [hereinafter WAPA].[3] The scope of the review provided for in WAPA is:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the follow-

---

**2.** The Wyoming Medical Practice Act of 1987 has been amended since 1987, but the effective date of the amendments is subsequent to the initiation of these proceedings.

**3.** Wyo.Stat. § 33–26–407 (1987) provided:
Judicial review of the findings of the board may be obtained pursuant to the Wyoming

Administrative Procedure Act. All licenses revoked or suspended by the board are void pending administrative and judicial appeals except where the board finds that the licensee's continued practice presents no danger to the public.

ing determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance .with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo. Stat. § 16–3–114(c) (1990).

These standards, of course, relate to review both in the district court and in this court.

■ As those standards of review have been discussed in our cases, one precept which has evolved is that agency action will be set aside if it is not supported by substantial evidence. *Cody Gas Co. v. Pub. Serv. Comm'n of Wyoming*, 748 P.2d 1144 (Wyo.1988). Substantial evidence is relevant evidence which a reasonable mind might accept in support of the conclusions of the agency. *Matter of Farman*, 841 P.2d 99 (Wyo.1992); *State ex rel. Wyoming Worker's Compensation Div. v. White*, 837 P.2d 1095 (Wyo.1992); *Amax Coal Co. v. Wyoming State Bd. of Equalization*, 819 P.2d 825 (Wyo.1991); *Vandehei Developers v. Pub. Serv. Comm'n of Wyoming*, 790 P.2d 1282 (Wyo.1990); *Palmer v. Bd. of Trustees of Crook County School District 1*, 785 P.2d 1160 (Wyo.1990); *Trout v. Wyoming Oil & Gas Conservation Comm'n*, 721 P.2d 1047 (Wyo.1986). The entire record is to be examined to determine if there is substantial evidence to support the agency's findings. *Far-*

*man; White; Amax; Palmer; Trout.* The reviewing court does not substitute its judgment for that of the agency with respect to findings of fact if they are supported by substantial evidence. *Trout.* When the case comes before the supreme court, the findings of the agency are reviewed without according any special deference to the decision of the district court. *Union Pacific R.R. Co. v. Wyoming State Bd. of Equalization*, 802 P.2d 856 (Wyo. 1990). *See Holly Sugar Corp. v. Wyoming State Bd. of Equalization*, 839 P.2d 959 (Wyo.1992). The burden is assigned to the party challenging the sufficiency of the evidence to demonstrate that the Board's decision is not supported by substantial evidence. *Christensen v. Wyoming Bd. of Certified Pub. Accountants*, 838 P.2d 723 (Wyo.1992); *Union Telephone Co., Inc. v. Wyoming Pub. Serv. Comm'n*, 821 P.2d 550 (Wyo.1991); *Amax; Palmer.*

■ If the agency action is supported by substantial evidence, its decision should be reversed only for errors of law. *Union Telephone.* We have summarized the three possibilities that exist upon a review of agency conclusions of law in this way:

The agency may correctly apply their findings of fact to the correct rule of law. In such case, the agency's conclusions are affirmed. But the agency could apply their findings of fact to the wrong rule of law or they could incorrectly apply their findings of fact to a correct rule of law. In either case, we correct an agency conclusion to ensure accordance with law.

*Employment Sec. Comm'n of Wyoming v. Western Gas Processors, Ltd.*, 786 P.2d 866, 871 (Wyo.1990) (citations omitted). *See Wilson v. State of Wyoming ex rel. Office of Hearing Examiner*, 841 P.2d 90 (Wyo.1992).

■ If the correct rule of law has not been invoked and correctly applied, the court does not defer to the agency's conclusion, but rather the agency's errors are to be corrected. *Union Telephone.* In the light of these precepts of administrative review, we turn to an examination of the

Order Granting Partial Relief entered in the district court.

In pressing his claim of deprivation of due process, Dr. Devous contends Wyo. Stat. § 16–3–113(c) (1990) is controlling. The statute provides in pertinent part:

No revocation, suspension, annulment or ·withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gave notice by mail to the licensee of facts or conduct which warrant the intended action, and the licensee was given an opportunity to show compliance with all lawful requirements for the retention of the license. * * *.

Wyo.Stat. § 16–3–113(c).

Dr. Devous' position is that the failure of the Board to give him written notice before the informal interview and before the filing of its complaint and notice of contested case hearing resulted in an unlawful suspension of his license. Dr. Devous' contention here is valid.

The significance of constitutional protections with respect to professional licensure was summarized by the Supreme Court of Iowa almost fifty years ago. The Court said:

The cases, from which we have quoted, clearly announce fundamental principles, essential to the life of a free people living under a republican form of government. The right to earn a living is among the greatest of human rights and, when lawfully pursued, cannot be denied. It is the common right of every citizen to engage in any honest employment he may choose, subject only to such reasonable regulations as are necessary for the public good. Due process of law is satisfied only by such safeguards as will adequately protect these fundamental, constitutional rights of the citizen. Where the state confers a license to engage in a profession, trade, or occupation, not inherently inimical to the public welfare, such license becomes a valuable personal right which cannot be denied or abridged in any manner except after due notice and a fair and impartial hearing before an unbiased tribunal. Were this not so,

no one would be safe from oppression wherever power may be lodged, one might be easily deprived of important rights with no opportunity to defend against wrongful accusations. This would subvert the most precious rights of the citizen.

*Gilchrist v. Bierring,* 14 N.W.2d 724, 732 (Iowa 1944).

This capsulization of the import of constitutional principles with respect to licensure is consistent with our law in Wyoming.

In *Garrison v. Bd. of Trustees of Memorial Hospital of Laramie County,* 795 P.2d 190 (Wyo.1990), we acknowledged that the right to practice medicine is a conditional property right subject to the police power of the state. It follows that the provisions of the Constitution of the United States and the Constitution of the State of Wyoming pertain and require that due process of law be afforded prior to revocation of such a property right. The record in this case does not include a written notice to Dr. Devous of the facts or conduct which were to be the subject of the informal interview. There is discussion about an unsigned letter, dated October 2, 1990, that arguably provided Dr. Devous with the requisite notice of the charges that were the subject of the informal hearing. That letter never was introduced into evidence and is not to be found in this record. Consequently, it cannot be considered. We have no way of knowing what Dr. Devous was told, although he assures the court that he would have challenged the sufficiency of the notice prior to the hearing and would have moved to dismiss the proceedings on the grounds of inadequate notice, if the notice had been established.

In *Fallon v. Wyoming State Bd. of Medical Examiners,* 441 P.2d 322 (Wyo.1968), an unsworn report of the Grievance Committee of the Wyoming State Medical Society, which was endorsed by the State Medical Society and constituted the case against the physician, was submitted ex parte to the state Board of Medical Examiners for consideration prior to the hearing in the disciplinary proceeding. We held that the physician was denied a fair and impartial

hearing. We ruled he was entitled to such a hearing as a matter of law and that right was derived from his constitutional claim to due process in the suspension proceeding. Factually, *Fallon* is distinguishable, but the significant principles of law are applicable here.

In *Fallon*, the physician licensee did not appear before the Grievance Committee of the Wyoming State Medical Society. According to *Fallon*, there was no obligation upon the licensee to appear before the Grievance Committee as far as the Board is concerned. The Committee, however, drew conclusions from the contents of the report, and it submitted ex parte to the Board that Fallon was guilty of using false and fraudulent statements in his practice. Those conclusions were predicated upon Fallon's failure to appear before the Committee and that proved to be highly prejudicial to him. In *Fallon*, after the Committee had filed its report with the State Board of Medical Examiners, the Board gave notice to the physician licensee that it had been requested to consider suspending or revoking his license. That notice simply stated, "[t]he nature of the offense charged by the complainants is the use of false or fraudulent statements in documents that were prepared by you in your practice." *Fallon*, 441 P.2d at 324. Fallon filed a motion with the Board for a bill of particulars, requesting a more definite statement concerning the facts and the nature of the charges against him. That motion was denied. The holding of this court in *Fallon* was that the licensee was not accorded the fair and impartial hearing to which he was entitled, and it reversed the trial court with instructions to remand the case to the Board for rehearing.

 A disciplinary proceeding before a licensing board is an adversary proceeding. The burden is upon the complainant to present its case in a proper way and to state with precision the charges against the licensee. Those charges then must be established by clear and convincing evidence. With respect to proper findings of fact, where a right of judicial review is granted from the decision of an administrative agency, the agency must find the basic facts upon which its decision rests. It is fundamental that principles of justice and fair play require an orderly proceeding appropriate to the case or adapted to its nature, one in which the licensee has an opportunity to be heard and to defend, enforce, and protect his rights before a competent and impartial tribunal while represented by counsel. Finally, we recognize a presumption that the action of the Board is correct, and that presumption must be overcome by the challenging party. *Fallon*.

 Dr. Devous had both a statutory and a constitutional right to notice and an opportunity to be heard. The due process clauses of the Constitution of the United States and the Constitution of Wyoming demand these minimal guarantees. The Fourteenth Amendment to the Constitution of the United States provides, " * * * nor shall any State deprive any person of life, liberty, or *property*, without due process of law * *. *." (Emphasis added). Article 1, § 6 of the Constitution of the State of Wyoming makes a similar provision, "[n]o person shall be deprived of life, liberty or *property* without due process of law." (Emphasis added.) *See Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (holding minimum procedural safeguards are required in administrative proceeding); *Palmer*, 785 P.2d 1160 (recognizing adequate notice is requisite element of administrative agency action upon affirming teacher's termination); *Bd. of Trustees, Laramie County. Sch. Dist. No. 1 v. Spiegel*, 549 P.2d 1161 (Wyo.1976) (holding notice of termination given teacher was inadequate, and school board's failure to grant teacher's motion for more definite statement constituted abuse of discretion and denial of due process).

The general concepts that are articulated in *Fallon* are applicable to this case. Dr. Devous attended the various hearings, including the informal interviews, but he did refuse to answer questions, invoking his privilege against self-incrimination. Nothing in this record indicates that Dr. Devous was afforded any notice of the facts and

the nature of the charges against him. The action of the Board in demanding that Dr. Devous defend against vague and indefinite charges resulted in a denial of not only his rights under the statute, but also a constitutional denial of his right to due process. In light of the constitutional and statutory authority as applied by this court in *Fallon,* we conclude that Dr. Devous' constitutional right to due process in the disciplinary proceeding was infringed, and the decision of the district court to sustain the suspension of his license must be reversed. The ground that we invoke for this reversal is inadequate notice under Wyo.Stat. § 16–3–114(c)(ii)(D).

▓ Even if Dr. Devous' due process rights with respect to notice had been protected, reversal would be mandated upon another ground. Dr. Devous argues that, absent other substantial evidence of the violation of the statutory grounds for discipline, a suspension of his license based solely on his exercise, in the course of an agency proceeding, of his privilege against self-incrimination found in the Fifth Amendment to the Constitution of the United States is unlawful. We agree, and we find several decisions of the Supreme Court of the United States to be persuasive and controlling. *See Lefkowitz v. Cunningham,* 431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1, (1977); *Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976); *Lefkowitz v. Turley,* 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973); *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). Dr. Devous had been convicted of a felony. He was aware before he attended the informal interview that a criminal investigation might have been instituted with respect to his alleged use of Demerol at the Wright Medical Clinic. He chose to invoke his right to remain silent under the Fifth Amendment for that obvious reason and, also, to avoid breaching patient confidentiality. Under these circumstances, the failure of the Board to provide Dr. Devous with the required notice of the specific facts and conduct that warranted the intended action of the Board to revoke his license made it even more likely Dr. Devous would exercise his right under the Fifth Amendment. Even though that invocation of his constitutional right might hazard his valuable property right to practice medicine, his right to preserve his personal liberty was equivalent to the property right and might well be perceived as the paramount right.

▓ We also accept Dr. Devous' third argument that the bias of the physician as to whom his challenge was denied prevented him from having a fair and impartial hearing. Under the *Fallon* rationale, we must agree. We said in *Fallon,* 441 P.2d at 329, "[w]e also start, of course, with the presumption that members of the board 'are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.' " We summarized our perception of our responsibility with respect to the contention of bias and prejudice on the part of the board members when we quoted the following language:

> The Act authorizes the Board to enter an order upon a complaint alleging unfair labor practices, only after a "hearing." This must mean a trial by a tribunal free from bias and prejudice and imbued with the desire to accord to the parties equal consideration. There is perhaps no more important right to which litigants are entitled than that they be given such a trial. Its impairment, ipso facto, brings the court, and administrative bodies as well, into public disrepute, and destroys the esteem and confidence which they have enjoyed so generally. Time and experience have demonstrated that the public, as well as litigants, will tolerate the honest mistakes of those who pass judgment, but not the biased acts of those who would deprive litigants of a fair and impartial trial. Foremost among the responsibilities imposed upon a reviewing court, is to make sure that this foundation of our Judicial system be not undermined.

*Fallon,* 441 P.2d 322, 329 (citing *Inland Steel Co. v. Nat'l Labor Relations Bd.,* 109 F.Ed 9, 20 (7th Cir.1940)).

In light of the clear and compelling bias of the other physician, whom he challenged, Dr. Devous' right to a fair and impartial hearing was violated by that individual's participation in these proceedings. That physician and Dr. Devous were both practitioners in Sweetwater County in the 1980s. That physician appeared before the Board of Medical Examiners during the initial investigation of Dr. Devous in the early 1980s, and his opinion at that time was that Dr. Devous was guilty of a felony. It is clear that the physician had formed unfavorable opinions about Dr. Devous which arguably would taint the license revocation proceedings. Under the circumstances, the physician's assertion that he could weigh the evidence objectively does not serve to eliminate the potential for bias. This is particularly true in light of the reliance upon Dr. Devous' exercise of his privilege against self-incrimination to draw an adverse inference. It also must be recognized that in reaching its decision, even though these aspects were set aside by the district court, the board relied upon the subjective expertise of its members for appropriate standards with respect to several of the alleged violations by Dr. Devous.

■ Turning then to the appeal of the Board with respect to the decision of the district court to set aside certain statutory grounds for failure of substantial evidence, we affirm the district court in that regard. The crux of the issue is whether the record must include expert testimony with respect to those statutory grounds, or whether we must acknowledge and accept the expertise of the Board members in establishing standards that demonstrate infringement of the statute. There was no expert testimony offered at the hearing to establish standards with respect to these statutory grounds. If judicial review has any purpose, it must be exercised by objectively evaluating evidence in the record. There is no way that a judicial review could reach the subjective determination of standards by individual members of the Board. Consequently, in order to maintain the integrity of judicial review, we conclude it is necessary that, with respect to the violations that were asserted under Wyo.Stat. § 33–26–402(a)(xv), (xviii), and (xxvi), expert testimony in the record was required and, lacking such testimony, there is no substantial evidence to sustain those allegations. We find the precepts articulated by other jurisdictions are compelling in this regard. *E.g. Franz v. Bd. of Medical Quality Assurance*, 31 Cal.3d 124, 642 P.2d 792, 181 Cal.Rptr. 732 (1982); *Arthurs v. Bd. of Registration in Medicine*, 383 Mass. 299, 418 N.E.2d 1236 (1981); *New Jersey State Bd. of Optometrists v. Nemitz*, 21 N.J.Super. 18, 90 A.2d 740 (1952); *Dailey v. North Carolina State Bd. of Dental Examiners*, 309 N.C. 710, 309 S.E.2d 219 (1983).

■ Finally, we turn to the appeal by the Board from the refusal of the district court to sustain certain costs that the Board had imposed with respect to the license suspension proceedings. The order of the district court deleted from the claim of costs amounts claimed for legal fees and the expenses of a hearing examiner. We affirm the refusal to order the imposition of these costs against Dr. Devous. In *UNC Teton Exploration Drilling, Inc. v. Peyton*, 774 P.2d 584 (Wyo.1989), we adopted the American rule that each party in a lawsuit ordinarily shall bear his or her own attorney fees unless there is an express statutory authorization or a contractual provision to the contrary. The Board has cited no statutory or contractual justification for the award of attorney fees or the expenses of the hearing examiner. The applicable statute provides, in pertinent part:

Following a hearing to deny, refuse to renew or reinstate, revoke, restrict or suspend a license on the grounds that a licensee is impaired or has engaged in errant conduct, the board shall enter its order and findings pursuant to the Wyoming Administrative Procedure Act. The Board may take one (1) or more of the following actions:

\* \* \* \* \* \*

(viii) Assess part or all of the cost of the proceeding against a disciplined licensee; * * *.

Wyo.Stat. § 33–26–405(a)(viii).

The Board argues that, since the statute provides for it to assess part or all of the costs of the proceeding against the disciplined licensee, this aspect of its decision should be sustained. We agree with the district court that nowhere in the statutes or rules in this jurisdiction has the term "costs" been construed to include such items. We disagree that it is overly restrictive and unwarranted to construe the language of this statute in relation to other Wyoming statutes, rules, and case law which interpret the term "costs." The expenses of the hearing examiner are to be treated like attorney fees for these purposes and, for that reason, properly were denied.

We reverse the decision of the district court sustaining the suspension of Dr. Devous' license to practice medicine. We affirm the decision of the district court setting aside certain aspects of the decision and order of the Board of Medical Examiners relating to other disciplinary action and the imposition of the contested costs against Dr. Devous.