**Jack E. TAYLOR, M.D., Appellant (Petitioner),**

v.

**WYOMING BOARD OF MEDICINE, Appellee (Respondent).**

No. 96–103.

Supreme Court of Wyoming.

Jan. 21, 1997.

Mark E. Macy of Bayless, Slater & Macy, P.C., Cheyenne, for Appellant (Petitioner).

Don W. Riske, Special Assistant Attorney General, Cheyenne, for Appellee (Respondent).

Before TAYLOR, C.J., THOMAS, GOLDEN and LEHMAN, JJ., and VOIGT, District Judge.

VOIGT, District Judge.

This is an appeal from the district court's order affirming appellee's decision to deny appellant's second application for reinstatement of his physician's license. Finding that appellee's decision was not arbitrary, capricious, characterized by an abuse of discretion, nor in violation of law, and that the decision was supported by substantial evidence, we affirm.

## I. ISSUES

The parties' wording varies only slightly in stating the issues:

1. Whether the decision of the Wyoming Board of Medicine to deny Dr. Taylor's second Petition for Reinstatement of his physician's license was arbitrary, capricious, an abuse of discretion and otherwise not in accordance with the law.

2. Whether the decision of the Wyoming Board of Medicine to deny Dr. Taylor's second petition for reinstatement of his physician's license was unsupported by substantial evidence.

## II. FACTS

In 1970, appellant, Jack E. Taylor (Taylor), was licensed to practice medicine in Wyoming. For several years thereafter, he engaged in the general practice of medicine in Gillette, Wyoming. However, in 1985, he pled guilty to obstruction of justice in a federal court case arising out of allegations that he had improperly obtained and dispensed controlled substances. Taylor was incarcerated for approximately fifteen months of a three-year sentence as a result of this conviction, and his license to practice medicine in the state of Wyoming was revoked.

In 1993, Taylor applied to the Wyoming Board of Medicine (Board) for reinstatement of his license. After a hearing on February 6, 1994, the Board denied Taylor's application for reinstatement. Taylor applied again in August of that year. The hearing on this application for reinstatement was held on February 4, 1995. Taylor's application for reinstatement was again denied. It is this latter denial that is the basis of this appeal.

## III. STANDARD OF REVIEW

■ Judicial review of administrative agency action takes place pursuant to the dictates of Wyo. Stat. § 16–3–114 (1990). W.R.A.P. 12.09; *United States Steel Corp. v. Wyoming Environmental Quality Council*, 575 P.2d 749, 750 (Wyo.1978). In an appeal from a decision of the Wyoming Board of Medicine, this right to appeal is also specifically recognized at Wyo. Stat. § 33–26–407 (Cum.Supp.1996). A party not satisfied with the result of an appeal to the district court may seek further review by this court. Wyo. Stat. § 16–3–115 (1990). In such case, this court accords no special deference to the district court's conclusions, but inquires into the matter as if it had come directly from the administrative agency. *Chevron U.S.A., Inc. v. State*, 918 P.2d 980, 982 (Wyo.1996); *Matter of Andren*, 917 P.2d 178, 180 (Wyo.1996).

■ These statutory judicial review standards have been analyzed countless times by this court. *See, e.g., State ex rel. Wyoming Workers' Compensation Div. v. Espinoza*, 924 P.2d 979, 981 (Wyo.1996); *Laramie County Bd. of Equalization v. Wyoming State Bd. of Equalization*, 915 P.2d 1184, 1188–89 (Wyo.1996); *Matter of Goddard*, 914 P.2d 1233, 1236–38 (Wyo.1996); *Devous v. Wyoming State Bd. of Medical Examiners*, 845 P.2d 408, 413–15 (Wyo.1993). Consistently, it has been stated that the party contesting the administrative agency decision has the burden of proving that the agency's decision was reached in violation of one or more of the standards set forth in Wyo. Stat. § 16–3–114(c). *Devous*, 845 P.2d at 414; *Mountain Fuel Supply Co. v. Public Service Com'n of Wyoming*, 662 P.2d 878, 883 (Wyo.1983). Upon review of the entire record, if the reviewing court finds the administrative agency decision to have been based upon substantial evidence, and in conformity with the law, the court will not substitute its judgment for that of the agency. *Olheiser v. State ex rel. Wyoming Workers' Compensation Div.*, 886 P.2d 269, 272 (Wyo. 1994); *Devous*, 845 P.2d at 414. Substantial evidence is defined as relevant evidence that

a reasonable mind can accept as adequate to support the administrative agency's conclusion. *Coleman v. State ex rel. Wyoming Workers' Compensation Div.*, 915 P.2d 595, 598 (Wyo.1996); *Devous*, 845 P.2d at 414. In its review of the administrative agency action to determine whether such was arbitrary, capricious, or characterized by an abuse of discretion, the court looks to whether the administrative agency's decision is based on a consideration of relevant factors and whether it is rational. *Tri–State Generation and Transmission Ass'n, Inc. v. Environmental Quality Council*, 590 P.2d 1324, 1330 (Wyo.1979).

## IV. DISCUSSION

The practice of medicine in Wyoming is governed by the Medical Practice Act. Wyo. Stat. §§ 33–26–101 through 33–26–511 (1987 & Cum.Supp.1996). Pertinent sections of the Act as it appeared at the time of relevant events provide as follows:

1. The Wyoming Board of Medicine is created to regulate the practice of medicine. Wyo. Stat. § 33–26–201 (Cum.Supp.1996).

2. No person may practice medicine in this state without first having obtained a license from the Board. Wyo. Stat. § 33–26–301 (1987).

3. Mandatory requirements for licensing are adopted, and the Board is authorized to impose additional regulations "necessary to implement" the Act. Wyo. Stat. §§ 33–26–202(b)(v), 33–26–302, 33–26–303(a)(x) (Cum. Supp.1994).

4. Specific standards are adopted whereby the Board "may refuse to grant or renew, revoke, suspend or restrict a license or take other disciplinary action * * *." Wyo. Stat. § 33–26–402(a) (Cum.Supp.1994).

5. Reinstatement of a license may be sought by petition to the Board, which petition "shall state reasons and contain information demonstrating that the petitioner is no longer impaired and is able to safely, skillfully and competently resume the practice of medicine." Wyo. Stat. § 33–26–406(b) (1987).

6. Upon denial of a petition for reinstatement, the petitioner must wait a full year before submitting another such petition. Wyo. Stat. § 33–26–406(d) (1987).

Pursuant to its statutory authority, the Board has adopted certain Rules and Regulations for Physicians and Physicians Assistants. Section 5(b) of Chapter 4 thereof contains the Board's requirements for a personal interview with any applicant for license reinstatement:

> In addition to the requirements of W.S. 33–26–303 and pursuant to W.S. 33–26–303(x), the Board shall require all applicants, other than applicants for a temporary license, to appear before the Board and to establish in a personal interview, by oral responses his or her knowledge of and ability to practice medicine and to answer, to the satisfaction of a majority of Board members, any questions regarding past or pending disciplinary actions in this or any other state and personal and professional history.

Taylor presents a two-pronged attack against the application of this body of law in his case. First, he contends that "the Board has not provided any meaningful objective standards that must be met or criteria that must be satisfied before an applicant's medical license can be reinstated." Second, he alleges that the Board failed to make adequate findings of fact to support its denial of the application for reinstatement. While his first argument, when made to the district court, was couched in terms of due process, it is made to this court under Wyo. Stat. § 16–3–114.

The denial of Taylor's second application for reinstatement of his license can only be understood in the context of the denial of his first application for reinstatement, and the earlier revocation of his license. A review of the entire record reveals an uncomplicated course of significant events. In 1985, Taylor, a licensed practicing physician, pled guilty in federal court to a felony (obstruction of justice) in a case involving underlying allegations of unlawful prescription drug practices and sexual contact with patients. As a result, Taylor's license to practice medicine in the state of Wyoming was revoked in 1986.

Some seven years later, Taylor made his first petition for reinstatement of that license.

On February 6, 1994, the Board provided Taylor with a hearing on this first application for reinstatement. The record contains a twenty-page transcript of this hearing. Taylor was questioned in detail about the incidents leading to his criminal conviction, about his plans for the future practice of medicine in the event his license were to be reinstated, about his knowledge of particular medical procedures, about any medical education since revocation of his license, and about his views and opinions of the propriety of physician/patient sexual relationships. The Order Denying Application for Reinstatement of Physician's License resulting from the hearing contains the following relevant findings:

> 3. Taylor's application for reinstatement and his own statements to the Board during his personal interview before the Board on February 6, 1994, reveal that Taylor served a three year term in a federal penitentiary as the result of a guilty plea entered by him to felony obstruction of justice charges. It was admitted by Taylor that the charges stemmed from several incidents involving his practice of medicine in the State of Wyoming and controlled substance prescriptions for family members and friends with whom he had or was having sexual relationships. Taylor also admitted acquiring a controlled substance for himself through the use of a prescription which he wrote for an employee. Taylor did not indicate to the Board that he had any remorse about such incidents or accept responsibility for such events.

> 4. Taylor's interview also revealed that he has not practiced medicine since 1986 and that he does not possess current and complete knowledge in the scope of practice indicated in his application to enable him to safely and competently provide medical care and treatment to the people of the State of Wyoming.

> 5. Taylor's interview also revealed that he had not considered at the time of the events which led to his felony conviction, nor was he aware of at this time, the considerations of appropriate physician/patient boundaries.

Taylor's second application for reinstatement, the denial of which is presently before this court, was made on August 12, 1994, about six months after the above-described hearing and order. In response to the application for reinstatement, the Board's Licensing Officer notified Taylor that he should provide two reference letters and verification of his license to practice in other states. Taylor provided four letters of reference, information as to his prior licensing in other states, and additional supportive documentation. A follow-up letter from the Board's Executive Secretary on September 12, 1994, then reminded Taylor to

> be prepared at that meeting to show the Board additional training and documentation of continuing education to bolster your petition for reinstatement. Because you have not practiced medicine for several years, the Board will be concerned about your currency in many areas of medicine and it would be helpful to them, and expedite the process for you, to have that information readily available * * *.

In January 1995, Taylor forwarded to the Board copies of continuing education certification for two programs he had completed—an 11.5 hour primary care course at Vail, Colorado, and a 60 hour video taped family practice course from the University of Nebraska Medical Center. Finally, on January 10, 1995, the Board's Executive Secretary contacted Taylor again, advised him of the exact time, date, and place of the hearing, and informed him that

> the Board will ask you questions regarding your medical knowledge, personal and professional history and intentions for practicing medicine in this State. Additionally, please be prepared to answer detailed, specific questions pertaining to medical practice in your area of expertise as a general practitioner.

To summarize, it is apparent that when Taylor appeared for the hearing on this second application for reinstatement, he had access to or knowledge of (1) the relevant statutes; (2) the relevant administrative rules; (3) everything discussed at the first

hearing; (4) the findings and conclusions from the first hearing; and (5) the concerns of the Board expressed by the Executive Secretary.

In this setting, the February 4, 1995 hearing commenced with the Board asking Taylor the following general question: "[W]hat has occurred over the past year which would convince this Board to grant you a license to practice medicine in the State of Wyoming?" Taylor's only response was to mention the two continuing education courses he had completed, and to suggest that he had read some medical journals or magazines. This was followed by another general question from the Board as to whether there was anything else Taylor wanted to bring up. Taylor then mentioned the letters of recommendation he had supplied. Board members then asked Taylor nine or ten specific questions about the continuing education programs and the fact that he had not practiced medicine for seven years. Finally, the Board once more asked Taylor if he had any "additional insights" for the Board. Taylor responded that he had some ideas that might involve working with occupational medicine or planned parenthood. He did not expand upon those ideas. Neither did he address any of the specific concerns that had been brought to his attention at the previous hearing or in the letters from the Executive Secretary.

By letter dated February 9, 1995 from the Board's Executive Secretary, Taylor was informed that his application for reinstatement had been denied. The stated reason was "your failure to demonstrate that you are no longer impaired and that you are able to safely, skillfully and competently resume the practice of medicine. W.S. 33–26–406(b)." The Board's later official Findings of Fact, Conclusions of Law and Order Denying Application for Reinstatement of Physician's License was more detailed. Relevant Findings of Fact included:

3. On the 30th day of June, 1986, the Board revoked Taylor's license due to his conviction of a felony as the result of a guilty plea entered by him to felony obstruction of justice charges. Taylor served a three year term in a federal penitentiary on such charges.

* * *

6. During his interview on this application, Taylor's [sic] admitted that he has not practiced medicine since 1986. Taylor described the medical education courses that he had pursued since his appearance before the Board in February, 1994.

7. Based thereon, the Board finds that Taylor does not possess current and complete knowledge in the scope of practice indicated in his application to enable him to safely and competently provide medical care and treatment to the people of the State of Wyoming.

The Board's Conclusions of Law were as follows:

1. This application is governed by the procedures and standards set forth in W.S. § 33–26–406.

2. Taylor does not possess current and complete knowledge in the scope of practice indicated in his application to enable him to safely and competently provide medical care and treatment to the people of the State of Wyoming.

3. Since Taylor does not possess current and complete knowledge in the scope of practice indicated in his application to enable him to safely and competently provide medical care and treatment to the people of the State of Wyoming, his application must be denied.

## V. CONCLUSION

■ Taylor does not dispute the fact that it was his burden at the hearing to show that he met Wyoming's standards for practicing medicine. From the above-cited statutes and administrative regulations, from his previous hearing, and from the Executive Secretary's "warning letters," Taylor could not have been unaware that the chief concern of the Board was his ability "to safely, skillfully and competently resume the practice of medicine," given the nature of his earlier offenses, and given the passage of seven years since he last practiced medicine. Yet he produced almost no evidence in that regard. Consequently, he cannot be heard to complain that the

Board's findings of fact were insufficient. As correctly pointed out by the district court in its affirmance of the Board's decision, the law does not require an administrative agency to make basic findings of fact when the agency concludes that a party has failed to meet its burden of proof. *City of Casper v. Utech,* 895 P.2d 449, 451–52 (Wyo.1995). Even if this were not the law, we would hold the basic findings of fact to be adequate in this case to allow judicial review and to support the ultimate findings of fact and conclusions of law. The decision of the Wyoming Board of Medicine is affirmed.