958 A.2d 700 (2008)
2008 VT 97
In re Licensing Appeal of J.H.
No. 06-443.
Supreme Court of Vermont.
July 18, 2008.
*701 Michael Marks and Lorin E. Parker of Tarrant, Marks & Gillies, Montpelier, for Appellant.
William H. Sorrell, Attorney General, and Barbara Crippen, Special Assistant Attorney General, Montpelier, for Appellee.
Present: REIBER, C.J., JOHNSON, SKOGLUND and BURGESS, JJ., and BENT, Supr. J., Specially Assigned.
¶ 1. JOHNSON, J.
J.H. challenges the State Board of Education's decision to retroactively suspend her professional educator's license for five months based on its conclusion that she acted incompetently and engaged in misconduct while investigating a death threat. J.H. argues that the Board's decision must be reversed because her license was effectively suspended for fourteen months prior to the Board's decision, without notice or opportunity to be heard, in violation of 3 V.S.A. § 814 and the Board's own rules. We agree that J.H.'s license was wrongfully withheld, and we vacate the Board's decision. Given our conclusion, we do not address J.H.'s other arguments.
¶ 2. We briefly summarize the events underlying the disciplinary charges. J.H. was the principal of St. Johnsbury School during the 2004-2005 school year. In February 2005, she learned that an eighth grade student had received several anonymous death threats. J.H. suspected that a seventh grade student, M.T., either knew about the death threats or was responsible for them. J.H. questioned M.T. about the death threats on numerous occasions, including a two-hour interview in the presence of other adults and uniformed police officers. During this latter interview, J.H. asked M.T. to link pinkies with her across the table, believing that this would help M.T. focus. This "pinky promise" lasted for twenty minutes. The day after the two-hour interview with police, J.H. *702 learned of a "suicide note" that M.T. had written several months earlier, and she decided that M.T. needed a mental health evaluation. J.H. informed M.T. of the upcoming mental health screening, and she then began questioning M.T. again about the death threats. She was overheard yelling at M.T. and using profanity. M.T. apparently confessed during this interview but she later retracted her confession.
¶ 3. Based on these events, the school superintendent filed a complaint with the Department of Education, and the Department notified J.H. in April 2005 that it was initiating an investigation. On June 1, J.H. was formally notified by the Commissioner of the Department of Education that he had found reasonable grounds to recommend the suspension of her license, with conditions for reinstatement, on the grounds that she had engaged in misconduct while on duty that potentially placed a student in physical or emotional jeopardy, and that she had failed to demonstrate competence as an administrator. See State Board of Education Manual of Rules and Practices (SBEM) Rule 5711(3); SBEM Rule 5711(1). He recommended a five-month suspension of J.H.'s license during the school year, as well as a mental health assessment and any necessary counseling as a prerequisite to reinstatement of her license. On the same date, J.H. was also notified by the Licensing and Professional Standards Office that, based on her conduct, it had found reasonable grounds to recommend the denial of the renewal of her license, with conditions for reinstatement. See SBEM Rules 5710(2), (4)(a).
¶ 4. J.H. challenged these recommendations before the Vermont Standards Board for Professional Educators (VSBPE), which appointed a panel to review them. In a written memorandum, the panel concluded that the alleged conduct was sanctionable and it recommended that the full VSBPE adopt the Commissioner's recommendations.[1] A motion to adopt the panel's recommendation was made before the VSBPE but it failed by a vote of eight to six. The VSBPE then issued a "disposition order" which indicated the result of the vote, but did not offer any explanation for the decision or propose an alternative recommendation. Cf. SBEM Rule 5713.1(C)(3) (recommendation of VSBPE *703 shall be in writing and shall contain reasons for recommendation); id. 5713.2(D)(3) (same). The Commissioner appealed from this decision to the State Board of Education.
¶ 5. While these proceedings were pending, J.H.'s license expired by its own terms on June 30. On July 1, she contacted the licensing office, inquiring about her renewal application and her new license. J.H. asserted that, by rule, her license could not be suspended until after her appeal was decided, and that she was entitled to continue to be employed as licensed until the Board rendered its decision. The licensing office apparently did not respond to her inquiry.[2]
¶ 6. On December 10, J.H. again contacted the licensing office seeking information about her renewal application. The licensing office responded on December 22, essentially continuing to treat the license as one to which J.H. was not fully entitled, even while agreeing with J.H. that, by rule, she could continue to be employed "as licensed" while she appealed the denial of her renewal application. The licensing office asserted that it was not required to issue J.H. her written certificate of licensure as long as the Department continued her status as a licensed educator pending the outcome of her appeal. The licensing office indicated that it would inform any prospective employer that J.H. was listed in the Department's database as licensed.
¶ 7. Instead of signing the renewal license, the licensing office offered J.H. two options with respect to a written license; it could either refund her renewal fee and place the matter on hold while retaining J.H.'s status as licensed in the Department's database, or it could issue her a written license with the understanding that the renewal was subject to any disciplinary action or summary suspension ordered by the Board. The licensing office cautioned J.H. that if she chose the latter option and used the written certificate to pursue employment, she would need to inform prospective employers that the future status of her license was uncertain due to the pending disciplinary action. If she failed to do so, the licensing office explained, the written license could be considered verification that she met the competence and conduct standards for licensure, notwithstanding the Department's determination, subject to her appeal rights, that she did not. The letter indicated that J.H. should inform the licensing office in writing at her earliest convenience as to how she wished to proceed. J.H. apparently did not respond to this letter.
¶ 8. At around the same time, J.H. moved to dismiss the evidentiary hearing before the Board. J.H. argued that before a licensing sanction could proceed, the VSBPE needed to find that certain threshold requirements were satisfied, and these requirements could not be satisfied in this case given the Department's behavior. See SBEM Rule 5713.2(D)(2); id. 5713.1(C)(1). J.H. noted, moreover, that she had already suffered a more serious sanction than that proposed by the Department because her license had already been improperly withheld for more than five months. She thus argued that the hearing officer should simply review the existing record and uphold the VSBPE's decision.
*704 ¶ 9. The hearing officer rejected this argument and denied the motion, finding that because the case would proceed to a de novo evidentiary hearing, there was no need to reach the arguments regarding the nature of the record below, nor was it necessary to determine what the VSBPE intended by its disposition order. Even assuming arguendo that the VSBPE affirmatively found that the Commissioner had not met his burden under SBEM 5713.2, the hearing officer explained, the Commissioner would still have the right to seek an evidentiary hearing, and he would bear the burden of proving his case.
¶ 10. Following an evidentiary hearing, the hearing officer issued a written recommendation to the Board. See SBEM Rule 5713.1(D)(1) (explaining that Board may appoint hearing officer to conduct hearing on its behalf and prepare proposed findings of fact, conclusions of law, and a recommended decision); id. 5713.2(E)(1) (same). The hearing officer concluded that J.H. had demonstrated incompetence as an administrator, and recommended that the VSBPE's decision be reversed. She also concluded, however, that the Department should have issued J.H. her physical license during the pendency of her appeals, and she rejected the Department's assertion that listing J.H. "as licensed" in its database was sufficient to protect J.H.'s property interest in the license. The hearing officer thus reasoned that although the Department had demonstrated a basis for its recommendation, it would be inequitable under the circumstances to grant the Department's request for a five-month suspension. She proposed instead that the Board construe the time in which the licensing office did not issue J.H.'s written license as akin to a suspension. Both parties filed exceptions to this decision.
¶ 11. In September 2006, the Board issued its order. It appears to have adopted all of the hearing officer's findings of fact, but it reached several different conclusions. Unlike the hearing officer, the Board concluded that the Department met its burden of proof on both charges against J.H. Thus, it determined that J.H. not only demonstrated incompetence as an administrator but also that she engaged in conduct that would potentially place a student in physical or emotional jeopardy.
¶ 12. The Board also reached a different conclusion on the appropriate sanction. It recognized that whenever the Department takes action to suspend an educator's license, the educator continues as licensed, unless the Department has sought a summary suspension. It also acknowledged the Department's assertion that listing J.H. as licensed in its database sufficiently protected her property interest in her license. The Board did not explicitly accept or reject the Department's position, however. Instead, it simply stated that J.H.'s physical license should have been issued to her pending a decision in her underlying appeals. Notwithstanding this conclusion, the Board did not find that any additional suspension would be inequitable, nor did it adopt the hearing officer's conclusion that the period in which J.H. was denied her written license was akin to a suspension. Instead, it determined that J.H.'s license should be suspended for five months, and it would consider the suspension to have commenced on December 10, 2005. It offered no explanation as to why this was appropriate. The Board also ordered J.H., as a condition of her license, to enter into a written plan setting out appropriate training and supervision for future investigations of serious student misconduct, with provisions for consequences if she did not adhere to the plan. This appeal followed.
*705 ¶ 13. We vacate the Board's decision.[3] By statute and by rule, J.H. was entitled to notice, a hearing, and a decision by the Board before her professional educator's license could be suspended or revoked. Section 814(c) of Title 3, V.S.A., specifically provides that:
No revocation, suspension, annulment, or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gave notice by mail to the licensee of facts or conduct which warrant the intended action, and the licensee was given an opportunity to show compliance with all lawful requirements for the retention of the license.
See also In re Desautels Real Estate, Inc., 142 Vt. 326, 334-35, 457 A.2d 1361, 1365 (1982) (stating that 3 V.S.A. § 814(c) contemplates one hearing where a licensee can demonstrate that he or she was in full compliance with all lawful requirements at time of the alleged violation). The Board's own rules also state that no license suspension or revocation shall take "effect until the appeal to the State Board of Education is decided in accordance with 3 V.S.A. § 814(b)." SBEM Rule 5713.2(F).
¶ 14. Because J.H. had timely applied to renew her license, she was also entitled to the benefit of 3 V.S.A. § 814(b), which provides that:
When a licensee has made timely and sufficient application for the renewal of a license or a new license with reference to any activity of a continuing nature, the existing license does not expire until the application has been finally determined by the agency, and, in case the application is denied or the terms of the new license limited, until the last day for seeking review of the agency order or a later date fixed by order of the reviewing court.
The Board's rules similarly provide that "[w]hen a denial of renewal is under appeal, the educator may continue to be employed as licensed until a decision is rendered by the State Board of Education." SBEM Rule 5713.1(F).
¶ 15. By refusing to issue J.H. a copy of her written license, the Department violated the statute and the Board's rules. It effectively suspended J.H.'s license for fourteen months without first providing her an opportunity to be heard, contrary to the basic elements of due process. See Rich v. Montpelier Supervisory Dist., 167 Vt. 415, 420, 709 A.2d 501, 504 (1998) (essential elements of due process are notice and an opportunity to be heard). The requirements set forth above are specifically designed to prevent such arbitrary action. As one court explained more than sixty years ago:
"Where the state confers a license to engage in a profession, trade, or occupation, not inherently inimical to the public welfare, such license becomes a valuable personal right which cannot be denied or abridged in any manner except after due notice and a fair and impartial hearing before an unbiased tribunal. Were this not so, no one would be safe from oppression wherever power may be lodged, one might be easily deprived of important rights with no opportunity to defend against wrongful accusations. This *706 would subvert the most precious rights of the citizen."
Devous v. Wyo. State Bd. of Med. Exam'rs, 845 P.2d 408, 415 (Wyo.1993) (quoting Gilchrist v. Bierring, 234 Iowa 899, 14 N.W.2d 724, 732 (Iowa 1944)).
¶ 16. The Department indicated that it did not want to issue J.H. her license because the license could be considered verification that J.H. met the competence standards, which the Department believed that she did not. This is an insufficient basis for refusing to issue J.H. her license as required by the statute and the rules. J.H. had a right to challenge the merits of the Department's position before her license was taken away. We require adherence to the rules so that significant property rights are not unlawfully destroyed. See Pet v. Dep't of Health Servs., 228 Conn. 651, 638 A.2d 6, 24 (1994) (expressing similar sentiment).
¶ 17. If the Department believed that J.H. posed an immediate risk, then it could have availed itself of the summary suspension procedure set forth in the statute. Pursuant to 3 V.S.A. § 814(c):
If the agency finds that public health, safety, or welfare imperatively requires emergency action, and incorporates a finding to that effect in its order, summary suspension of a license may be ordered pending proceedings for revocation or other action. These proceedings shall be promptly instituted and determined.
See also SBEM Rule 5713.2(F) (describing summary suspension procedure). The record shows that the Department waited for a year after the incidents at issue to pursue a summary suspension and that its request was denied. Yet the Department persisted in wrongfully withholding J.H.'s license.
¶ 18. There is no support for the Department's assertion that J.H.'s rights were sufficiently protected by listing J.H. as licensed in the Department's database. As set forth above, J.H. was entitled to retain her license until the Board rendered its decision, and this necessarily includes the right to physically possess the license. Indeed, both the evidence presented at the hearing and the Board's rules indicate that the physical possession of a license is critical. See SBEM Rule 5220.1 (explaining that, "[e]xcept as set forth in Rule 5510, any educator employed in a public school shall possess a valid Vermont educator license, an endorsement appropriate to the professional assignment, and any other license or credential required by these rules or the applicable endorsement, on the first day of service," and that "[t]he educator shall maintain the educator license, endorsement, and any other applicable license or credential throughout the period of service"); id. 5520.5 (license and/or endorsement not valid until issued in name of VSBPE); id. 5400 (issuance of license authorizes holder to practice as an educator in the endorsement field(s) and grade level(s) specified). We similarly reject the Department's assertion that J.H.'s license was available to her and that she was to blame for her failure to inform the licensing office as to how she wanted it to handle her license. The onus was not on J.H. because by statute and by rule she is entitled to remain licensed until suspended, period.
¶ 19. While the Board acknowledged that J.H. should have been issued her license pending its decision on her appeals, it failed to recognize that the Department violated the statute and the Board's rules, and it failed to impose any consequences for the Department's wrongful conduct. Instead, as noted above, it concluded that J.H. acted improperly, and it imposed a five-month retroactive suspension, effective as of December 10, 2005.
*707 ¶ 20. We cannot agree that the Board's decision is appropriate under the circumstances of this case. The Department wholly ignored 3 V.S.A. § 814 and the Board's rules and it improperly withheld J.H.'s physical license for fourteen months. Section 814(c) provides that any license revocation or suspension that occurs in violation of the statute is void. Thus, applied literally, J.H.'s past suspension of fourteen months was unlawful and of no effect. Cf. Devine v. State, Dep't of Licensing, 126 Wash.App. 941, 110 P.3d 237, 242 (2005) ("Due process requires the opportunity to be heard. . . . Where due process is not satisfied prior to a license revocation, the underlying revocation or suspension is void." (quotation omitted)). That does not mean, however, that J.H. should now be subject to an additional suspension of five months, assuming that we found no other basis to disturb the Board's opinion. If that were the case, the Department would only benefit from its unlawful conduct. We conclude that to give effect to the statutory requirements set forth in 3 V.S.A. § 814, the Board's decision, including its conclusions regarding J.H.'s behavior, must be vacated. Having effectively suspended J.H.'s license for fourteen months based on nothing more than unproven allegations of misconduct, the Board's conclusions and the sanction it imposed were not justified here. Cf. Madison v. N.D. Dep't of Transp., 503 N.W.2d 243, 246-47 (N.D.1993) (where evidence showed that agency had systemically disregarded applicable law in conducting administrative hearings, court reversed agency's decision to revoke individual's driver's license, in part to ensure that agency acted consistently and predictably in accordance with the law); and see 16 V.S.A. § 1707(a)(2)(A), (C), (D) (under new licensing appeal procedure, Board of Education may reverse hearing panel's decision where an appellant's substantial rights have been prejudiced due to findings, inferences, conclusions, or decisions made by panel in violation of constitutional or statutory provisions, made upon unlawful procedure, or affected by other error of law).
Vacated.
NOTES
[1] As the panel explained in its decision, the VSBPE's role was not to resolve disputed issues of fact but rather to consider whether the recommendations were appropriate assuming that the alleged conduct occurred. See SBEM Rule 5713.2(D)(2) (in appeal from Commissioner's recommendation regarding suspension or revocation of license, VSBPE shall adopt Commissioner's recommendation if it determines that the recommendation was made after following applicable procedures, there were reasonable grounds for the recommendation and the consequences sought are appropriate to the offense); id. 5713.1(C)(1) (in reviewing licensing office's recommendation to deny renewal application, VSBPE shall determine if applicable procedures were followed by the licensing office, and whether there were reasonable grounds for the licensing office's recommendation). Under the then-existing procedure, the Board considered appeals from the VSBPE de novo. Id. 5713.2(E)(2).

Effective July 1, 2007, a new procedure applies. Now, a licensing hearing panel, established by the VSBPE, considers challenges to the Commissioner's recommendations, and the panel has authority to issue subpoenas, authorize depositions, and conduct contested case hearings. 16 V.S.A. § 1702(c). A party may appeal from the hearing panel's decision to the State Board of Education, which conducts an on-the-record review. Id. § 1707(a). A party then has the right to a de novo appeal in Washington County Superior Court. Id. § 1707(b). Consistent with these changes, the regulations governing the licensing of educators and the preparation of education professionals are no longer part of the State Board of Education Manual of Rules and Practices, but are now under the purview of the VSBPE.
[2] The record indicates that J.H. was placed on paid administrative leave on June 3. After J.H.'s license expired, the superintendent contacted the Department, inquiring about J.H.'s status with respect to licensure. The Department responded on August 2, indicating that the school district could continue to employ J.H. as licensed. It appears that J.H. remained employed by the school district until December 2005.
[3] We note that this case has a somewhat unusual procedural posture. As reflected above, the VSBPE did not issue a written recommendation as required by SBEM Rule 5713.1(C), and thus, it is difficult to determine how the Board could "affirm, reverse, or modify" its recommendation. See id. 5713.1(D)(4) (Board shall issue a written decision "affirming, reversing or modifying the recommendation" of VSBPE). On the other hand, the appeal to the Board was de novo, which, as the hearing officer concluded, appears to render irrelevant any recommendation made by the VSBPE.